## THE CLEVELAND FIRE ALARM TELEGRAPH COMPANY *vs.* THE BOARD OF METROPOLITAN FIRE COMMISSIONERS.

Where a statute declares that contracts shall be given to the "lowest bidder," these words are not to be construed literally, and accepted as an absolute restriction. Although, in such a case, the bids should, doubtless, be *bona fide,* and conform strictly to the required specifications, yet in determining whether a bid is the lowest among several others, the quality and utility of the thing offered—its adaptability to the purpose for which it is required—must be first considered.

The act of the legislature of April 17, 1861, "relative to contracts by the mayor, aldermen and commonalty of the city of New York," (*Laws of* 1861, *ch.* 308,) requiring all such contracts to be awarded to the lowest bidder, does not apply to contracts made by the Board of Commissioners of the Metropolitan Fire Department; that department being, by the act of March 30, 1865, "to create a Metropolitan fire district," &c., (*Laws of* 1865, *ch.* 249,) invested with sole and exclusive authority to extinguish fires, and to provide all the instrumentalities essential for that purpose, and thus necessarily invested with unlimited discretion in negotiating and executing contracts, without being obliged even to advertise for proposals.

And such board of commissioners having advertised for proposals for a contract for furnishing a fire alarm telegraph, in the city of New York, and the plaintiffs having offered to establish one upon their plan, for $275,000, and other persons having offered to furnish one upon a different plan, for $426,450; *Held* that the commissioners had a right, in the exercise of their discretion and judgment, to adopt the latter system instead of the former, as cheapest in the end; especially as, in their advertisement, they had reserved

Cleveland Fire Alarm Telegraph Co. *v.* Board of Fire Commissioners.

the right to reject any or all proposals which, in their judgment, did not embrace a perfect and reliable system.

Accordingly *held* that an injunction could not be sustained, by the plaintiffs, although the lowest bidders, to restrain the execution of a contract made with the highest bidders.

ACTION to restrain the execution and performance of a contract about to be made by the defendants, the Board of Metropolitan Fire Commissioners of the Metropolitan Fire Department, with the defendants Charles T. Chester and John N. Chester for the supply, by the latter, of a fire alarm telegraph apparatus to the city of New York for the sum of $426,450, although the plaintiffs had offered to supply such apparatus for $275,000.

On the 12th of July, 1869, the fire commissioners advertised for proposals for "a new and perfected system of telegraph for fire alarm purposes in the city of New York." The notice specified the nature of the machinery, required the machinery &c. to be of the best quality and improved style, and stated that the commissioners would "reserve the right to reject any or all proposals which, in their judgment," did "not embrace a perfect and reliable system." It also stated that specifications could be obtained at the office. Accordingly application was made for their further specifications. Upon examining them it was found that they described a patented system which Gamewell & Co. held, and which no one else had a right to use. The plaintiffs thereupon sent to the commissioners a protest against this mode of excluding all competition. The time for receiving proposals, by the original advertisement, was limited to July 26, 1869. The commissioners, in reply to the plaintiffs' request and objections, stated that they would receive, and the plaintiffs might put in, proposals based upon the advertisement alone, without reference to the specifications, and extended the time to put in proposals to August 9. The plaintiffs then put in proposals to do and furnish what the advertisement required, for $275,000.

On the 11th of August, 1869, the commissioners awarded the contract to the Chesters, for $426.450.

The plaintiffs alleged that their system had received the approval of the commissioners, or a committee appointed by them, and that the system of Gamewell & Co. and the Chesters was condemned by said commissioners, for its cost; that the defendants, the Chesters, were mere representatives of Gamewell & Co.; and that there was reason to suspect collusion and fraud in giving the job to Gamewell & Co. They invited a public test or examination of the two systems, and claimed that according to the law controlling the action of these officers, they were entitled to the contract for erecting the telegraph.

The plaintiff relied upon the following provision of the act of the legislature of 1861, "relative to contracts made by the mayor, aldermen and commonalty of the city of New York," as showing that the commissioners were bound to award the contract to the lowest bidder, viz: "All contracts by or on behalf of the mayor, aldermen and commonalty of the city of New York shall be awarded to the lowest bidder for the same, respectively, with adequate security; and every such contract shall be deemed confirmed in and to such lowest bidder, at the time of the opening of the bids, estimates or proposals therefor; and such contract shall be forthwith duly executed in the name of said mayor, aldermen and commonalty, by the head of the department having cognizance thereof, with such lowest bidder." (*Laws of* 1861, *p.* 702, *ch.* 308.)

The provision of the fire department act, under which the commissioners acted in making these contracts, is as follows: "The board of commissioners shall have full power to provide, in and for the city of New York, supplies, horses, tools, implements and apparatus of any and all kinds, (to be used in the extinguishing of fires,) and fire telegraphs; to provide suitable locations for the same; and

to buy, sell, construct and repair, and have the care of the same; and take any and all such action in the premises as may be reasonably necessary and proper." (*Laws of* 1865, *p.* 397, *ch.* 249, § 6.)

This was a motion by the plaintiffs for an injunction to restrain the defendants, the Commissioners of the Metropolitan Fire Department, from executing and performing the contract so made with the defendants the Chesters.

*James Emott,* and *Daly, Henry & Olin,* for the plaintiffs.

—— ——, for the defendants.

CLERKE, J.   Only two questions are really presented on this motion:  1. Does the charter, or the act relative to contracts by the mayor, aldermen and commonalty of the city of New York, passed April 17, 1861, control the Board of Metropolitan Fire Commissioners; and if it does, 2.  Are the words "lowest bidder" to be construed literally, and to be accepted in an absolute sense.

*First.* The title of the act, in terms, declares it to apply to contracts made by the mayor, aldermen and commonalty of the city of New York, and so does the text of the act itself.  It declares expressly, also, that the contracts referred to in it shall be executed in the name of the mayor, aldermen and commonalty.  When we consider that the act of 1865 invests the Metropolitan Fire Department with the sole and exclusive authority to extinguish fires, and to provide all the instrumentalities essential for this purpose, it would be indulging in a very wide latitude of interpretation to say that the restrictions of the act of 1861, or of the charter, apply to it.  The truth is, the department are necessarily invested with unlimited discretion in negotiating and executing contracts, and are not even obliged to advertise for proposals.  The act of 1865 creates

a fire district, consisting of the cities of New York and Brooklyn, not responsible to, and not identical with, any local authority.   The officers and agents of the department are appointed by the Governor with the consent of the senate; they are required to report to the Governor; and although the funds necessary for the support and other expenditures of the department, are levied and collected by the board of supervisors of the county of New York, those funds are deposited and kept in the State treasury.

*Second.*  Even where a statute declares that contracts shall be given to the "lowest bidder," it cannot be held that these words should be construed literally, and accepted as an absolute restriction.   In such case, undoubtedly, the bids should be *bona fide,* and should conform strictly to the prescribed specifications; but in determining whether a bid is the lowest among several others, the quality and utility of the thing offered—in other words, its adaptability to the purpose for which it is required—must be first considered.   The offer, in nominal amount, may be exceedingly low, while the thing offered may be exceedingly worthless.   It may be apparently cheap, while really dear, and much dearer and less adapted to the required purpose than other offers, in which a much larger amount of money was required.   If the commissioners were restricted to the lowest bid, they would be bound to consider which of the telegraphic systems submitted to their consideration would ultimately cost the city the smallest amount of money, and which would be the most effectual and most desirable.   In the exercise of their judgment in this matter, they have decided that the system which they have adopted is cheaper at $426,450 than that of the plaintiffs at $275,000.   In fact they are sustained by the sworn opinion of several experts—among the rest, by that of the renowned inventor of the telegraph.   This right of independent judgment they observed in their advertisement;

expressly notifying all, that "they would reserve the right to reject any or all proposals which, in their judgment, do not embrace a perfect and reliable system.

The motion is denied, with costs.

[NEW YORK SPECIAL TERM, at Chambers, October 4, 1869.  *Clerke*, Justice.]