WARREN V. GALBREATH, Respondent, v. JOHN NEWTON, Appellant.

Kansas City Court of Appeals, December 24, 1887.*

1. SPECIAL TAX BILL—IMPERFECTIONS IN AS TO RECITALS OR STATEMENTS—CASE ADJUDGED.—The court finds fault with the form of the tax bill in this case, and suggests its amendment. It fails to allege defendant to be the °owner of the property sought to be charged ; and there is no direct statement of the doing of the work, or who did it, or that material was furnished, or that the property sought to be charged is in this state. These things appear only by inference, and the bill should be made more definite by amendment. (*Kiley v. Cranor*, 51 Mo. 541).

2. ORDINANCES—CONTENTS OF AS TO SPECIFICATIONS—WHEN NOT NECESSARY TO STATE—CASE ADJUDGED.—It is not necessary that an ordinance providing for the doing of work under the provisions of a city charter, should also provide for the mode, material, or character of the work. It was sufficient, in this case, that the specifications for the work were in the hands of the city engineer, at the time the ordinance was adopted, and were adopted with it, and as part of it.

3. —— CONTRACT UNDER—VARYING FROM TERMS OF ORDINANCE—ESTOPPEL FROM OBJECTING TO IN SOME INSTANCES.—Although a contract cannot differ from the terms of the ordinance providing for the work, and although it is true that when authority is conferred upon the board of aldermen to improve streets, it cannot be delegated to others, but must be exercised strictly within the terms of the charter, yet parties may so act, in their dealings with the municipal authorities, as to be estopped from objecting, as having thereby induced the city to enter upon the improvement suggested. But it must appear that he had knowledge of the infirmity when he so acted.

4. —— NOTICE TO BIDDERS—PURPOSE OF.—Notice of the letting of public work or improvements is for the purpose of competition, and for safety against the occasional cupidity of public servants, as well as for affording all an equal opportunity to obtain the employment the work affords.

---

* NOTE :—This case was not delivered to me by the clerk until June 28, 1888.—*Reporter.*

5. ESTOPPEL—DOCTRINE OF—WHAT INVOLVED IN.—There is no such thing as estoppel *in pais* for neglecting to speak or act when the party did not know the facts which, if known, would have made it his duty to speak or act. The doctrine of such estoppel always presupposes error on one side and fault or fraud upon the other.

6. TAX BILLS—ENFORCEMENT OF—DISTINCTION BETWEEN AND VOLUNTARY CONTRACTS BETWEEN INDIVIDUALS.—A party cannot enforce a special statutory tax lien against the property of the owner on a *quantum meruit*. Such a lien is in all cases to be enforced by virtue of valid proceedings authorizing the assessment. These are not cases for *quantum meruit* or *quantum valebat*, or of voluntary contracts between individuals, but are statutory proceedings *in invitum*.

APPEAL from Pettis Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed and remanded.*

*Motion for rehearing denied.*

Statement of case by the court.

T. B. Anderson was the contractor for macadamizing a street in the city of Sedalia. Tax bills were issued in his favor for the work done and material furnished. He assigned these bills to plaintiff who brought suit on them, asking that the lien of the bills be enforced against defendant's abutting property.

The answer admitted the passage of the ordinance authorizing the improvement of the street, but denied its validity on the ground that neither the material to be used, nor the manner of its use in the improvement, was specified or referred to in the ordinance except by the following section therein :

" Sec. 3. Said macadamizing shall conform to the established grade of said street and be constructed according with the specifications in the hands of the city engineer, and under the direction of the committee on streets and alleys."

And also that at the time of the passage of the ordinance the specifications were not in the hands of the city engineer and had not been made out, but were

drawn up afterwards. The answer further denied that the contract was properly let and averred that it was not in accordance with the terms of the ordinance or the specifications; that it was provided by ordinance that contracts of this sort should be let to the lowest bidder after advertisement in some newspaper published in the city; that notice of the letting of this contract was published, "directing parties desiring to bid to apply at the office of the city engineer for plans and specifications; that the specifications which the city engineer prepared for the inspection of bidders, required the macadam to be laid as follows: Cover the street with a foundation of hard limestone four inches thick, none less than one foot square, and laid close; that by the terms of said notice and said specifications, bidders were neither authorized nor requested to bid for said work to be done otherwise than as specified. Nevertheless the mayor and board of aldermen of said city, through their committee on streets and alleys, undertook and assumed to contract with said T. Benton Anderson, that in case he substituted flint boulders, or 'nigger heads,' for said limestone, at the request of any property-holder that he should receive $2.70 per lineal foot therefor, and defendant says that it is under said pretended contract that the tax bill against defendant's property which is sued on herein, was issued and delivered to said T. Benton Anderson, and defendant says that said mayor and board of aldermen had no power or authority to make any such contract with said Anderson and thereby bind the property of this defendant, and that the said tax bill being issued for the performance of work upon said Ohio street, with material and in a manner not provided for in said ordinance or any specifications, is inoperative, illegal, and void." That in consequence of such acts on the part of the city authorities, there was no competition for said contract. The answer further alleged that no opportunity was given property-owners to do the work themselves as was provided by the ordinance.

Plaintiff's reply admitted the difference between the contract and the ordinance, and the difference between the contract and the advertisement for bids, but averred, by way of estoppel, that after the passage of the ordinance and pending the advertisement for bids "a number of owners of property on said street waited upon the mayor and aldermen of said city and on said committee on streets and alleys, and objected to and protested against the use of said limestone, and suggested and requested that flint boulders or 'nigger heads' be substituted therefor"; that after the bids had been received for doing the work with limestone, as provided by the ordinance, and after the contract had been awarded to Anderson, "but before the written contract was executed, said property-owners again called upon said officers of said city, and again requested that said work should be done with flint boulders or 'nigger heads' instead of limestone, and insisted that it should be provided in said contract that it might be so done if requested by the property-owners"; that thereupon the said committee informed Anderson of the request and demanded that a clause should be inserted in said contract "to the effect that whenever requested by any of said property-owners, he would do said work with flint boulders or 'nigger heads' instead of limestone, and the said Anderson yielding to the request of said property-owners and to gratify and accommodate them consented to the insertion of said clause in said contract." The reply further averred that before doing the work in front of defendant's property Anderson asked him which he preferred, limestone or boulders, and defendant, being fully informed as to the ordinance, contract, and proceedings, and all the circumstances and proceedings touching said matters, answered that he preferred boulders; that while said work was being done in front of defendant's property he was frequently present, inspecting it and never complained or objected to the use of boulders, but on the contrary expressed himself as satisfied. The reply further averred that the acts and

conduct of defendant induced Anderson to do the work with boulders.

The evidence in the cause tended to support the answer and reply, except that there was no evidence that defendant ever requested the contract should be made as it was, or that he knew anything of the circumstances surrounding the passage of the ordinance, or of the specifications, or of advertising, letting, or writing the contract. But there was evidence tending to show that Anderson, before beginning the work, asked defendant which material he preferred, and that defendant expressed a preference for boulders; that as the work progressed, defendant observed it, made no complaint, but spoke of it in approving terms.

The court instructed the jury to find for plaintiff if defendant requested or assented that the improvement be made with a foundation of boulders or "nigger heads" instead of limestone. And that it was not essential that such request or assent be in any particular form, but that it was sufficient if defendant knowingly permitted Anderson to do the work with flint boulders under the impression that he desired it and assented thereto, "or that the defendant was cognizant of the fact that he had an option of having it done with a foundation of hard limestone or 'nigger heads,' as specified in the contract, and of the fact that the work was being so done, and stood by and permitted the same to be done without objecting to said Anderson or those representing him to the use of flint boulders or 'nigger heads,' and without informing said Anderson or those representing him of his preference or desire to have the limestone foundation, then such conduct on the part of the defendant is equivalent to a direct and positive request to have the work done with flint boulders or 'nigger heads.'"

The following instruction was also given at plaintiff's request:

"5. If you find from the evidence that the specifications referred to in the ordinance were in the hands of

the city engineer when the ordinance was passed, and that it called for limestone foundation only ; and that the contractor did the work with a foundation of flint boulders or 'nigger heads,' without having the request or assent of the defendant thereto as before explained, still the plaintiff is entitled to recover from defendant his proportionate share of the value, if any, of said work as done, in such sum as you may find, from the evidence, is the amount of said proportionate share by reducing the contract price for limestone foundation by such amount, if any, as you may believe, from the evidence, was the difference between the contract price with the limestone foundation and the value of the improvements as made, not exceeding $2.70 per lineal foot."

The verdict was for plaintiff, and defendant appeals to this court.

E. J. SMITH, W. S. SHIRK, F. A. SAMPSON, H. C. SINNETT, B. G. WILKERSON and JOHN MONTGOMERY, JR., for the appellant.

I.   The tax bill is the cause of action, not the contract. *Prendegast v. Richards*, 2 Mo. App. 187 ; 2 Dill. Mun. Corp., sec. 806.   The petition shows upon its face that the tax bills are void—it states no cause for this reason.   There is no sufficient recitation in the tax bills to authorize the issue of them.   Charter of Sedalia, secs. 15, 23, 24 ; Laws of Mo. 1875, page 297, and Laws of Mo. 1873, page 370 ; Blackwell on Tax Titles (2 Ed.) 366 ; *Einstein v. Gay*, 45 Mo. 62 ; *State ex rel. v. Mantz*, 62 Mo. 25 ; *Carroll v. Eaton*, 2 Mo. App. 479. A tax bill cannot be *prima-facie* evidence of anything not recited in it.   *Haegele v. Malinckrodt*, 3 Mo. App. 329 ; *Craemer v. Allen*, 3 Mo. App. 545.

II.   The ordinance for the grading of the street is void.   It does not specify the material with which the paving shall be done, its quantity, or quality, nor manner of doing the work.   These specifications can

only be fixed by ordinance. *Ruggles v. Collier*, 43 Mo. 404 ; *Saxton v. Beach*, 50 Mo. 489 ; *City v. Murphy*, 43 Mo. 395 ; *City v. Clemens*, 43 Mo. 404 ; s. c., 52 Mo. 133 ; *Shehan v. Gleeson*, 46 Mo. 100 ; *Haegle v. Mallinckrodt*, 46 Mo. 577 ; *Moran v. Lindell*, 52 Mo. 229 ; *Stewart v. City*, 79 Mo. 603. The city council could not delegate it to the committee nor the committee to the citizens. *Thompson v. City*, 61 Mo. 282 ; *Irvin v. Devve*, 65 Mo. 627 ; *Matthew v. City*, 68 Mo. 119.

III. The mere fact that the ordinance provides that the macadamizing shall "be constructed according with the specifications in the hands of the city engineer," is not fixing the specifications by ordinance. And if it were, the language is too indefinite to make "the specifications in the hands of the city engineer," whatever they may have been, a part of the ordinance. *City v. Galt*, 7 N. E. Rep. 471 ; *City v. Potter*, 10 E. Rep. 212. Plaintiff's second instruction should not, therefore, have been given, and defendant's seventh, eighth, and ninth instructions should have been given.

IV. But if the specifications became a part of the ordinance they called for a certain kind of material. A contract which called for a different material would not bind the property-owner, nor his property. *Thompson v. Shemerhorn*, 6 N. Y. (2 Selden) 92 ; *Ruggles v. Collier*, 43 Mo. 404.

V. The contract is void because the advertisement was for bids for one kind of work and material only, and the contract was let, without competition, for a different kind of work and material. The contract price for this different kind of work and material was fixed at $2.70 per foot—no competitive bids for such kind of work having been advertised for, or made. Notwithstanding such different work and material was to be optional with the property-owner, the contract was nevertheless void so far, at least, as it is attempted to make it the support or foundation of the tax bill sued upon. *Dickinson v. Poughkeepsie*, 7 Hun, 1. Such

looseness of procedure and official conduct will not be permitted. Dillon Mun. Corp., sec. 763, and note 2 ; *Keley v. Openheimer*, 55 Mo. 374, 375, 376 ; *Leech v. Cargill*, 60 Mo. 316, 317; *Mulligan v. Smith*, 59 Cal. 206, 233. Defendant's twelfth instruction should have been given.

VI. The court erred in giving plaintiff's fifth instruction. That instruction amounts in brief to this statement of the law: that though the ordinance prescribed a foundation of flat limestone, and though the contractor put in a foundation of "nigger heads," without the request or consent of defendant; yet the contractor nevertheless can recover, on a tax bill issued, the value of the work done with the "nigger heads" foundation. Such is not the law. Back of the tax bill must be a contract. Back of the contract must be an ordinance. Where is the ordinance that authorizes the foundation to be made of "nigger heads?" This instruction takes the case outside the limits even of the estoppel claimed by plaintiff. The same ruling would render it unnecessary to pass any ordinance at all. *City v. Galt*, 7 N. E. Rep. 471 ; *Keiley v. Openheimer*, 55 Mo. 374, and cases cited ; *Leach v. Cargill*, 60 Mo. 316.

VII. The ordinance provides that any property-owner may do his own work by notifying the committee within ten days of the passage of the ordinance. No opportunity was given here. *Leach v. Cargill*, 60 Mo. 316 ; *City v. Swope*, 79 Mo. 446.

VIII. Even if defendant did assent to the change of material, and saw the work progressing, without objection, he is not thereby estopped from denying the invalidity of the ordinance ; nor of the contract ; nor of the variation of the work from the specifications. *Perkinson v. McGrath*, 9 Mo. App. 26 ; *Keane v. Clausman*, 21 Mo. App. 485; *Mulligan v. Smith*, 59 Cal. 206. But there is no pretense that defendant knew of any defects in the ordinance or contract, or of any fact which would enable him to defeat the tax bill, and so knowing allowed the work to be done without objection. Under

such circumstances mere silence or even acquiescence cannot estop him. *Town v. Stevenson*, 69 Mo. 372; *City v. Gorman*, 29 Mo. 593; *Ward v. Ins. Co.*, 9 N. E. Rep. 361. Plaintiff's second instruction is, therefore, erroneous.

IX. Fifteen per cent. interest can only be allowed when the verdict and judgment is for the full amount of the tax bill. Interest at fifteen per cent. per annum is only allowed as a penalty for wrongfully refusing to pay the tax bill. Here the verdict shows that the refusal was rightful, inasmuch as the tax bill was for $2.70 per foot, when but $2.50 was due. Under such circumstances the penalty cannot be enforced.

X. The whole work to be done under the ordinance must have been completed, before suit could be instituted to recover pay for any part. This suit was brought before the whole work was completed. *Kiley v. Cramer*, 51 Mo. 541.

Geo. P. B. Jackson, for the respondent.

I. The tax bills are not void. They sufficiently recite all that is necessary to be mentioned in them. *Haegle v. Mallinkrodt*, 3 Mo. App. 329; *Creamer v. Allen*, 3 Mo. App. 545; *Wand v. Greer*, 7 Mo. App. 83.

II. The ordinance is valid. It is not essential that the specifications for the improvement should be inserted in the body of the ordinance, it was sufficient to refer to specifications then in existence, and by such reference they became part of the ordinance. *Burr v. Dana*, 22 Cal. 11; *People v. San Francisco*, 27 Cal. 655; *State v. Morristown*, 5 Vroom (N. J.) 443; *Stone v. Cambridge*, 6 Cush. (Mass.) 270; *Sheehan v. Gleason*, 46 Mo. 100; *Moran v. Lindell*, 52 Mo. 219; *Carlin v. Cavender*, 56 Mo. 288; *Eyerman v. Blakeley*, 72 Mo. 145. The contract is not void, by reason of the provision in regard to the use of boulders. That clause may be rejected and a perfect contract remains, in harmony with and fully authorized by the ordinance. *Uhrig v. St. Louis*, 44 Mo. 458; *Transp. Co. v. Boyd*,

2 S. W. Rep. 364-8; *Himmelmann v. Satterlee*, 50 Cal. 70; *Dyer v. Chase*, 52 Cal. 440; *Hitchcock v. Galveston*, 6 Otto, 341.   It is not true that the advertisement for bids was for one kind of material, and the contract let for different material.   The bids were invited in accordance with the ordinance, and the contract was awarded in harmony with the ordinance and notice for bids. This constituted a legal contract, even though there was added an unauthorized clause, which might be rejected without destroying the balance.

III.   The charter of the city does not give to the property-owner the right to do any portion of the work on the street upon which his property lies.   The ordinance extended- a permission to do so, upon condition that notice of such intention was given within ten days. After the expiration of that time, and after the permission had ceased, the contract was let to do the work just as provided in the ordinance.   The insertion of the clause regarding boulders, was an additional favor and concession to the property-owners, that could have no force against them if they did not desire its advantages. If they had elected to do their own work at the proper time, they could have used boulders, as those did who acted in time.   The permission in the ordinance, to the property-owner to do his work, was not jurisdictional to the action of any officer.   The city charter did not provide any notice to be given to property-owners. Acts 1875, p. 297, sec. 4.   Hence the ordinance itself was notice.   *Palmyra v. Morton*, 25 Mo. 593.   Neither did the charter provide that a contract should be let upon competitive bidding—much less any notice for the reception of bids—therefore, advertisement for bids in any form was not essential.   *Greene v. Mayor*, 60 N. Y. 305; *Kingsley v. Brooklyn*, 78 N. Y. 200, 213.   Even the ordinance itself did not require the publication of any notice for bids.   The provisions of ordinances are merely directory.   *St. Joseph v. Anthony*, 30. Mo. 542. It was competent for the board to direct the committee of its members to award and enter into the contract.

*Hitchcock v. Galveston,* 6 Otto, 341 ; *Brewster v. Davenport,* 51 Iowa, 427. Therefore, even if either the board or its committee, acting within the scope of the authority conferred by the charter, did not conform to the ordinance enacted by themselves, still such acts are not invalid. *Ex parte Mayor,* 23 Wend. 277.

IV. Defendant is estopped by his conduct to object to the use of boulders instead of limestone or to raising objection against proceedings on actions preceding the doing of the work. Cooley on Taxation, 573 ; Cooley Const. Lim., sec. 181 ; Herman on Estoppel, secs. 554, 1221 ; *Sheehan v. Owen,* 82 Mo. 458 ; *Cross v. City,* 90 Mo. 13 ; *Tush v. Adams,* 10 Cush. 252 ; *Youngster v. Mayor,* 40 N. J. Law, 144 ; *People v. Goodwin,* 5 N. Y. 573 ; *Motz v. Detroit,* 18 Mich. 495 ; *Burlington v. Gilbert,* 31 Iowa, 356 ; *Bidwell v. Pittsburg,* 85 Pa. St. 412 ; *Hitchcock v. Galveston,* 6 Otto ( U. S.) 341 ; *Evansville v. Fisterer,* 34 Ind. 36 ; *Kellogg v. Ely,* 15 Ohio St. 64 ; *State ex rel. v. Mitchell,* 31 Ohio St. 592 ; *Daniels v. Jearney,* 12 Otto ( U. S.) 415. "The tax bill here sued on is not regarded as a tax, but as an assessment for improvements, and is not considered as a burden, but as an equivalent or compensation for the enhanced value which the property derives from the improvement." *Sheehan v. Hospital,* 50 Mo. 155–8 ; *Farrar v. St. Louis,* 80 Mo. 379, 387. The strict rules of law pertaining to taxes do not apply to assessments for street improvements. The liberal doctrine has been adopted in this state. Dillon Mun. Corp. [1 Ed.] sec. 812 ; *St Joseph v. Anthony,* 30 Mo. 537, 542 ; *Risley v. St. Louis,* 34 Mo. 416 ; *St. Louis v. Oeters,* 36 Mo. 463 ; *St. Louis v. Coons,* 37 Mo. 44 ; *Fowler v. St. Joseph,* 37 Mo. 237 ; *St. Louis v. Armstrong,* 38 Mo. 167 ; *St. Louis v. DeNoue,* 44 Mo. 136 ; *Moran v. Lindell,* 52 Mo. 229 ; *St. Louis v. Schoenemann,* 52 Mo. 348 ; *Neenan v. Smith,* 60 Mo. 292 ; *Bank v. Arnoldia,* 63 Mo. 229 ; *Bank v. Nelson,* 64 Mo. 418 ; *Carlin v. Cavender,* 56 Mo. 286 ; *Kiley v. Oppenheimer,* 55 Mo. 374. In a substantial sense the municipality is the agent of the property-owner. Dillon Mun. Corp. [1 Ed.] sec. 648.

V.   The fifth instruction given for the plaintiff was proper.   It authorized a recovery for the actual value of the work as done.   This is directly sanctioned and provided for by the charter.   Laws Mo. 1873, p. 370, proviso to sec. 24; *Neenan v. Smith*, 60 Mo. 292; *Bank v. Arnoldia*, 63 Mo. 229; *Bank v. Nelson*, 64 Mo. 421; *Creamer v. McCune*, 7 Mo. App. 91.

VI.   The suit was not prematurely brought.   The work was completed and the charter authorized the improvement of part of a street.   Laws of Mo. 1875, p. 297, sec. 4; *Halpin v. Campbell*, 71 Mo. 494; *Kiley v. Cramer*, 51 Mo. 541; *Weber v. Schergens*, 57 Mo. 393; *Neenan v. Smith*, 60 Mo. 296.

VII.   The allowance of fifteen per cent. penalty after judgment was proper.   Charter of Sedalia; Acts 1873, p. 370, sec. 24; *Neenan v. Smith*, 60 Mo. 295.

ELLISON, J.—I.   At the trial plaintiff introduced the tax bill, proved the assignment and rested.   Defendant demurred to the evidence on the ground of the insufficiency of the tax bill to make a *prima-facie* case.   The demurrer was overruled.   By section 24, acts of 1873, page 370, charter of Sedalia, it is provided that certified tax bills "shall in all cases be *prima-facie* evidence that the work and material charged in such bill have been furnished, of the execution of the work, the rates or prices, amount thereof, and of the liability of the person therein named as the owner of the land charged with such bill to pay the same."   One great fault with this tax bill is its failure to allege defendant to be the owner of the property sought to be charged, as required by the charter.   It levies "against John Newton a special tax," but nowhere intimates him to be the owner of the property.   Besides this defect, the tax bill as a whole is liable to much adverse criticism, it should and can be amended.   *Kiley v. Cranor*, 51 Mo. 541.   There is no direct statement of the execution of the work, or who did it, or that material was furnished, or that the property sought to be charged was in this state.   These

things can be inferred from what is stated, but the better and safer way would be to make it more definite by amendment.

II. It is insisted that the ordinance under which this improvement was made is void, in that it does not itself provide for the mode, material or character of the work, but refers to "specifications in the hands of the city engineer." The charter empowers the mayor and board of aldermen "to grade, pave, macadamize or otherwise improve" a street by ordinance only ; and it is well settled that they cannot delegate this power, or exercise it in any other way. But does it follow that the mode, material, or character of the work shall be specified *in the ordinance itself?* We have cases in this state where an ordinance has been upheld which, though insufficient and incomplete in itself, refers to other ordinances theretofore enacted. *Moran v. Lindell*, 52 Mo. 229 ; *Carlin v. Cavender*, 56 Mo. 288. In *State v. Mayor*, 3 Vroom, 49, an ordinance declared that a street should "be laid out and opened as defined on the map filed in the office of the town clerk, and then under a *videlicet* purports to state what that definition is, but makes the error stated" in that case. The ordinance was upheld notwithstanding the false description ; the reference to the map saved it. So in *State v. Morristown*, 5 Vroom, 445, an ordinance was held valid which referred for grade lines to maps and profiles on file in the office of the town clerk, and that though the map appeared not to have been filed, it was subject to identification by proof. To the same effect is *Stone v. Cambridge*, 6 Cush. 270. My conclusion is, that if the specifications were "in the hands of the city engineer" at the time the ordinance was adopted it was sufficient for all legal and practical purposes. The mayor and board of aldermen by ordinance adopted the specifications as they existed at the time in the official custody of the city engineer.

III. The contract as let by the committee is not the contract contemplated by the ordinance or the specifications. The specifications referred to in the ordinance

called for a foundation of hard limestone four inches thick, laid close together, and no stone to be less than one foot square. While it is true the contract as let contained such a provision, it contained the further important provision permitting the substitution of other and different material, the utility of which seems from the testimony to be of much contrariety of opinion. It permitted the contractor, at the request of the property-owner, to substitute, in lieu of the limestone called for in the ordinance, "flint boulders or 'nigger heads'" at fifty cents less price per foot. The correctness of the proposition that the contract cannot differ. from the terms of the ordinance is evident. *Thompson v. Schermerhorn*, 2 Selden, 92. It has been held many times by the Supreme Court of this state that when authority is conferred upon the board of aldermen to improve streets it cannot be delegated to others, but that such board must exercise it strictly within the terms of the charter. *Thompson v. City*, 61 Mo. 282; *Matthews v. City*, 68 Mo. 119, and cases cited. It follows as a logical conclusion, that if the board of aldermen must prescribe the character and kind of improvement for a street, and that they cannot delegate this power, a contract for improvement, the terms of which have been prescribed by them, cannot be changed by the parties designated to let it.

It is, however, said by counsel that that portion of the contract not authorized by the ordinance may be rejected and there will yet remain a valid contract which is within the terms of the ordinance. But the difficulty with the application of this contention is, that this improvement was made under the portion which it is suggested to reject. If that is eliminated, then the labor was performed and the material furnished without a contract to support it.

Again, the contract as let is not such as was advertised for bidders, which of itself is enough to render it illegal. *People v. Board*, 43 N. Y. 227. The advertisement for bidders for this work was under the terms of

the ordinance, while the contract, as actually let, was as has been shown. Notice of the letting of public work or improvements is for the purpose of competition and for safety against the occasional cupidity of public servants, as well, I might add, as for affording all an equal opportunity to obtain the employment the work affords. It is, and has been found to be, one of the means of security to the public and justice to the individual. A false notice, a notice not in substantial accord with the fact, is as bad, if not worse, than none at all. This contract for boulders was let without notice or competition. It may be that parties who had no facilities for furnishing limestone at any reasonable price, and, therefore, did not bid for the work, would have been eager to obtain the contract if they had known boulders were to be used. In some sections limestone would have to be quarried at much trouble and expense, while boulders could be gathered from the beds of creeks. This may or may not apply to the special vicinity of Sedalia, but it illustrates the necessity for caution where diverse interests should have an opportunity to be subserved. It is, however, contended that since the charter does not call for notice, none is required. But section two of the ordinance plainly implies there shall be notice. It directs that sealed proposals shall be received, and that the contract and work shall be let to the lowest responsible bidder. There can be no doubt that the private letting is in the face of this section, and that it contemplates reasonable public notice, if none other is prescribed by some general ordinance.

IV. Plaintiff interposes the plea of estoppel as a relief from the difficulties which lie in the way of his recovery. I am of the opinion there is no estoppel. The contract was different from the ordinance. The work was not done under the contract contemplated by the ordinance, it was done under the contract as changed. Admitting defendant said all that is claimed by the evidence, yet he was so speaking under the idea that there was a valid

contract. Assuming both were ignorant of the invalidity of the contract, what has defendant done that he should be estopped? Anderson went to him, and, in effect, said: "I have here a valid contract to pave the street in front of your property, it gives you a choice of limestone at $3.10, or boulders at $2.70 per foot, which will you take?" Defendant (laboring under the identical impression that Anderson is, as to the validity of the contract, but with different knowledge as to how it was made) answers, "I will take boulders." Anderson was unquestionably relying on his contract, and defendant neither did nor said anything to mislead him. He only acquiesced in Anderson's own statement and answered the inquiry which Anderson made. If Anderson had been acting under a legal contract contemplated by the ordinance and defendant had induced him to change the material therein called for, it would present an entirely different case.

We have not been referred to any case from this state bearing on the question in the shape it is presented here. There is a class of cases which hold that mere knowledge that work is being done by a municipal corporation is sufficient to put the property-owner upon inquiry as to the right of the corporation, and that if the owner remains silent and fails to assert his remedy until after the improvement has been made and paid for by the municipality, he cannot resist the tax assessment on the ground of illegality of the proceedings; and this, though it does not appear that the owner had knowledge of the illegality. Of this class are *Hampson v. Mayor*, 36 N. J. L. 159, and *Youngster v. Mayor*, 40 N. J. L. 244. Of the correctness of these and like cases, it is not necessary to say aye or nay.

There is another class of cases where parties who have been guilty of laches in asserting their remedy have been held not entitled in equity to an injunction restraining the collection of a tax, but are left to their *remedy at law*. Of this class is *Kelley v. Ely*, 15 Ohio St. 64, and *Metz v. Detroit*, 18 Mich. 495, 528.

There is yet another class, the principle of which may well apply to cases of the sort now being considered. Principal among these are the cases of *City v. Gilbert*, 31 Iowa, 356 ; *Bidwell v. Pittsburg*, 85 Pa. St. 412; *State ex rel. v. Mitchell*, 31 Ohio. St. 281, and *Tone v. Columbus*, 39 Ohio St. 281. The Iowa case was where property-owners signed and presented a petition to the city council asking for improvement on certain streets. The council granted their prayer. It was held that such petitioners, after their request had been complied with, could not resist payment of the tax on the ground that two-thirds of the property-owners had not signed, as was required by law. The court said, "that after having thus signed and presented the petition to the city council, thereby inducing the city to enter upon the improvement requested in the petition, the defendant is estopped from objecting that his petition was not sufficiently signed." This case has been frequently cited as illustrating and approving the principle now under review, but not necessarily as approving the correctness of applying the principle to the particular facts of that case. And so we wish to be understood in citing it. That there may be an estoppel in such character of cases is asserted in many adjudications, but that the court was correct in applying the principle to the particular facts of that case is denied. *In Matter of Sharp*, 56 N. Y. 257 ; *Tone v. Columbus, supra.* The latter cases hold that the petitioners have a right to rely upon a performance of its duty by the board which required it, before basing any action on the petition, to ascertain whether a sufficient number had been signed to confer jurisdiction.

In the Pennsylvania case, *supra*, the property-owner signed a petition asking for a street improvement under a certain law ; in pursuance of this petition the ordinance was passed, the signer was elected and *acted* as one of the commissioners to superintend the work, sell the city bonds, expend the proceeds on the street, and make the assessment, including his own. It was held he

was estopped from denying the validity of the law or the mode of assessment. In the course of the opinion the court said : "The authorities acceded to the request. They altered their previous position. They assumed the large additional indebtedness, relying upon the words and conduct of the petitioners. The latter declared that they would submit themselves to all the charges and responsibilities imposed by that act. They wilfully caused the authorities to believe this as a matter of fact. So believing, the authorities acted upon it. They accepted the offer in the terms in which it was made. The petitioners directed the work. They received and enjoy the benefits. To now permit them to deny the truth or the efficacy of the assurance given, and continued during the progress of the work, would work a fraud on the city which cannot be sanctioned."

In the case of *State ex rel. v. Mitchell*, 31 Ohio St. 592, where abutting property-owners caused a street to be improved by initiatory steps of their own, and the bonds of the city to be negotiated to pay for the improvement, they, that is, those causing these things to be done, were held to be estopped from denying the validity of an assessment to pay such bonds, though all was done under a law that was unconstitutional. And so it was held in *Tone v. Columbus*, 39 Ohio St. 281, that active participation in causing an improvement to be made will estop the party engaged therein from denying the validity of the assessment; but that to estop him from mere silence, it must be shown, among other things, that he had knowledge of the infirmity or defect in the proceedings which he is to be estopped from asserting.

If the infirmity in the case before us went to the original power of the board of aldermen to make improvements, such as that the law under which they acted was unconstitutional, as in the Ohio cases, we might have to consider whether silence merely would work an estoppel, under the ruling in *State v. Railroad*, 74 Mo. 163, where nothing is said of knowledge or notice. But as the infirmity in this case arises, not from

a want of power, but from the mode of exercising it, I should hold that silence with knowledge of the work, *and* of the defect in the proceedings, would complete the estoppel as to the validity of those proceedings. I regard the foregoing cases as authority for this assertion.

But while I recognize the legal proposition that, though the contract in this case was invalid, the defendant may be estopped from denying its validity, I do not concede that he has been shown to be in a position, or to have done anything precluding him from attacking the legality of the proceedings. He has taken no part in the movement whatever. He initiated no proceedings. He did not petition for the passage of the ordinance nor the improvement of the street. He took no part in making the contract, nor did he ask that it be changed from the terms of the ordinance. Though he knew the work was being done, he, knowing the law authorized such improvements under certain restraints and conditions, might well have assumed or supposed those conditions had been complied with and those restraints provided. He had a right to rely upon the authorities doing their duty under the law. *Tone v. Columbus, supra.*

I am, therefore, of the opinion that if it can be shown on retrial that defendant, by himself, or in connection with others, procured the substitution of the contract made for the one contemplated by the ordinance, he will be estopped to deny the validity of this assessment. So he will likewise be estopped if it can be shown that, though taking no part in the change of the contract himself, he had *actual* knowledge of the change or substitution having been procured by others, and knowingly acquiesced in the work done thereunder. In either of these cases he has by his own act induced and caused Anderson to alter his position to his prejudice, and brings himself under the correct principle of estoppel. It may be said that defendant will be presumed to have had knowledge of the ordinance and of

its provisions, and, therefore, when he saw the work being done, he knew that it was not in accordance with the ordinance. It is true that generally one will be presumed to know of the by-laws of a municipal corporation, but in a case of estoppel by silence, of the kind here considered, there must be actual knowledge. "There is no such thing as estoppel *in pais* for neglecting to speak or act when the party did not know the facts which, if known, would have made it his duty to speak or act." *Acton v. Dooley*, 74 Mo. 63. "An estoppel *in pais* is a moral question." *Delaplaine v. Hitchcock*, 6 Hill, 17. There must be in it some element of fraud. "The doctrine of estoppel *in pais* always presupposes error on one side and fault or fraud upon the other." *Morgan v. Railroad*, 96 U. S. 716.

V. At the request of plaintiff the court gave instruction number five, set out in the statement. The effect of this instruction is, that, notwithstanding the work was not done in accordance with the terms of the ordinance, notwithstanding it was done under the contract substituted for that contemplated by the ordinance, and notwithstanding there may be no estoppel, yet plaintiff may enforce a statutory special tax lien against defendant's property on a *quantum meruit*. I think this cannot be done. A tax lien of this nature is, in all cases, to be enforced by virtue of valid proceedings authorizing the assessment; for though these proceedings in some cases may, in actual fact, be infirm, improper, and invalid, the tax is yet enforced, by estoppel, on the theory that they are sound; that is, they are asserted to be legal upon the one side, and the other is not permitted to deny it. He is not allowed to say the truth, when by reason of his own conduct it would work a fraud upon the other party. These are not cases for *quantum meruit* or *quantum valebat*. They are not cases of voluntary contract between individuals, but are statutory proceedings *in invitum* where the party must respond, *nolens volens*. Plaintiff must enforce his lien on the actual validity of the contract, or by estoppel,

and in no other way. If this instruction can be allowed, a tax lien may be enforced for an improvement made in violation of the terms of the ordinance, or by one step further in direct line, without any ordinance. Of course, it is not meant to say that a contractor cannot enforce his lien unless he has precisely and minutely complied with his contract. In this, as in other cases, substantial compliance is sufficient. But here there has been no accidental, or unavoidable, or immaterial deviation from the terms of the contract. There is not an imperfect execution of the terms of the contract, but a wilful substitution of other matter. A contractor's idea, judgment or caprice is not to say of what material a street may be improved. The law has left that to another tribunal. If that tribunal says one sort, it is not for the contractor to say another. He must endeavor to comply with his contract, and he must meet with substantial success, else he cannot enforce his lien.

VI. Other objections urged by defendant are not thought to be well founded. By the terms of section four of this ordinance, if the property-owner desired to do the work himself, he should have given written notice to the chairman of the street and alley committee of his desire to do so within ten days after the passage of the ordinance. He was presumed to know of this ordinance (*Palmyra v. Morton*, 25 Mo. 593); and if he wished to avail himself of its terms, he should have done as it is therein directed. The ordinance in *Leach v. Cargill*, 60 Mo. 316, is unlike this. That ordinance called for affirmative action by the city engineer.

The judgment is reversed and the cause remanded. Hall, J., concurs; Philips, P. J., having been of counsel, not sitting.