JOHN R. CLAPTON, Administrator, Appellant, v. C. G. TAYLOR *et al.*, Respondents.

Kansas City Court of Appeals, April 4, 1892.

1. **Municipal Corporations:** CONSTRUCTION OF ORDINANCE. The ordinance set out in the statement is *held* to mean that the street was to be excavated ten inches below grade at the sides, gradually rising to a crown of four inches below such grade at the center of the street, as a preparation for the superstructure of boulders and gravel.

Clapton v. Taylor.

2.  ———: STREET IMPROVEMENT: LOWEST BIDDER: DUTY OF COUNCIL: PRESUMPTION. In letting contracts for street improvements the duty of city authorities is not wholly ministerial, but partakes sufficiently of a judicial character, in the absence of fraud or misconduct, to render their conclusion binding; and the law in regard to the letting of such contracts does not mean absolutely that the contract shall be given to the lowest bidder without regard to fitness, and the city authorities are presumed to have done, and not to have exceeded, their duty.

3.  ———: STREET GRADE: EVIDENCE. Street grades must be fixed by ordinance and where the ordinance and grade books referred to therein do not establish the grade to a reasonable certainty then it would be void and the natural surface would be taken as the true grade.

4.  ———: STREET IMPROVEMENT: WHAT PROPERTY LIABLE: DEPTH OF LOT. Street improvement is charged against the property which abuts the street improved at the time the lien attaches, regardless of depth of the original lot.

5.  Definitions: "ADJACENT." In the charter of Sedalia, "adjacent" in the section relating to street improvement has reference to the work done on the street within a certain length, which is to be levied as a tax on the abutting property.

6.  Municipal Corporations: NOTICE OF LETTING CONTRACT. Notice of the letting of contract for public work, such as street improvement, the cost of which is to be collected from the citizen, *nolens volens*, by special assessment of his property, is a matter which affects the substantial rights of the citizen, and is a condition precedent which must be fairly complied with, whether prescribed by charter or ordinance. The notice in this case *held* sufficient, though last publication was on Sunday, and there was no publication the day of the letting.

7.  ———: STREET IMPROVEMENT: OWNER'S RIGHT TO DO. The charter and ordinances of Sedalia do not require that the property-owner shall be given an opportunity to make street improvements before the city lets the same out by contract.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

THE following is the ordinance construed in the opinion:

"Sec. 1. That Fourth street between Lamine and Osage streets be graded and macadamized according to

the following plans and specifications: The grading to be done ten inches below grade with six inches' crowning in the center. The macadam to be constructed with a foundation layer of flint boulders, four inches thick, for a distance of twenty feet each side of the center of the street; this to be covered with clean flint gravel eleven inches deep in the center and gradually and uniformly diminishing to the sides where it shall be five inches in thickness making the whole macadam fifteen inches deep at the center and nine inches deep at the sides.

"Sec. 2. The committee on streets and alleys shall let the contract for said work to the lowest responsible bidders, and to that end shall receive sealed bids or proposals, and shall publish in one or more of the daily papers published in Sedalia a notice stating that bids will be received from persons desiring to contract for said work, and stating the time and place, where and at which said bids shall be opened, reserving the right to reject any and all bids received, whereto said notice shall be published at least five days before the time fixed for opening the same."

*Geo. B. P. Jackson*, for appellant.

The grade of a street in Sedalia, other than the natural surface, must be established by ordinance. Charter of Sedalia, secs. 14, 15, 17; Acts, 1875, secs. 3, 4, p. 297; Acts, 1873, sec. 17, p. 369. No such ordinance was shown in this case. The fixing of a new grade of streets must be shown by the records of the city, and testimony as to understanding and opinions of witnesses, and others, is hearsay, and was improperly admitted. *Nebraska City v. Lampkin*, 6 Neb. 27. The grade of a street is the natural or existing surface of the ground, in the absence of proper evidence showing a different grade. *Gibson v. Zimmerman*, 27 Mo.

App. 90. (2) The court erred in admitting the evidence which was received to show that Snedaker's was not the lowest bid, and in giving defendant's instruction, numbered 2. It was neither alleged nor proven that there was any fraud, partiality or improper conduct on the part of the city council in accepting the bid, and awarding the contract, or that defendants sustained any injury in consequence thereof. Elliott on Roads & Streets, pp. 427, 428; *St. Joseph v. Anthony*, 30 Mo. 542; *Brevoort v. Detroit*, 24 Mich. 324. The city council is the proper body to determine the lowest bid, and, in the absence of improper motive or conduct, their action should be final. Elliott on Roads & Streets, 441, 442; *Tel. Co. v. Board of Commissioners*, 55 Barb. 291; Welty on Law of Assessments, p. 436; 1 Dillon on Municipal Corporations [4 Ed.] sec. 468; *People v. Gleason*, 121 N. Y. 631. (3) The tax bill is *prima facie* evidence that everything has been regularly done (*Gibson v. Zimmerman*, 27 Mo. App. 90), and it, therefore, devolved upon defendants to establish the contrary. No evidence being offered upon that subject, the court erred in finding that the rejected bid was from a responsible party. *Rutherford v. Hamilton*, 97 Mo. 543–549; *Cole v. Skrainka*, 105 Mo. 307; Elliott on Roads & Streets, 410. (4) Proceedings for street improvements are liberally construed in this state. A substantial compliance with the ordinance is all that is required. *St. Joseph v. Anthony*, 30 Mo. 442; *Sheehan v. Owen*, 82 Mo. 458; *Cole v. Skrainka*, 105 Mo. 309; *Barber v. Hunt*, 100 Mo. 22.

*E. J. Smith*, for respondents.

(1) The giving of declaration, numbered 4, for defendants, declaring that if the contract was not let to the lowest responsible bidder plaintiff could not recover, was not error. *State ex rel. v. Barlow*, 48 Mo.

17; *Galbreath v. Newton*, 30 Mo. App. 380, 393–4; *May v. Detroit*, 12 Am. Law Reg. 149. See 15 American & English Encyclopedia of Law, p. 1090, and cases cited. It is seen section 2 of the ordinance in this case required the contract to be let to "the lowest responsible bidder." The court found Anderson, who bid $1.60 a foot, while the contract was led to Snedaker at $1.75 a foot, was a responsible bidder, and this is supported by the evidence. *Keane v. Cushing*, 15 Mo. App. 96; *Keane v. Claussman*, 21 Mo. App. 485; *Hewes v. Reis*, 40 Cal. 255; *In re Railroad*, 102 N. Y. 301; *Matter of Application of Lange*, 85 N. Y. 307; *Matter of Petition of Robbins*, 82 N. Y. 131; *Matter of Bank*, 75 N. Y. 388. (2) There is no doubt the declaration, numbered 6, given for defendant, declaring that a substantial compliance with the ordinance is required before a recovery can be had, is the law. Then number 9, also given for defendant, goes with this, and says if the work in front of the property of defendants is not down to grade, as required by the ordinance, defendants can deduct from the amount of the tax bills so much as it will cost to put it down, and if that is the whole amount of the tax bill plaintiff can recover nothing, and this is the law. *Creamer v. Bates*, 49 Mo. 523; *Meyer v. Wright*, 19 Mo. App. 283. Section 2 of the ordinance in evidence shows how the work was to be done as regards grade. (3) Before the work can be done and a tax levied to pay for it, the property-owner must have an opportunity to do it himself. Charter Acts of 1873, sec. 15, p. 368; Acts, 1875, p. 297; *Leach v. Cargill*, 60 Mo. 316; *Galbreath v. Newton*, 30 Mo. App. 380; *Palmyra v. Morton*, 25 Mo. 593; *Kansas City v. Hurling*, 87 Mo. 203; *Coal & Mining Co. v. Neptune*, 19 Mo. App. 438; *George v. Middaugh*, 62 Mo. 549; *Stewart v. Palmer*, 30 Am. Rep. (74 N. Y.) 289; 1 Dillon on Municipal Corporations, secs. 642–3,

and note; *State ex rel. v. Mayor,* 4 Zab. (N. J.) 662. (4) Notice for bids is essential, and the provision requiring it is mandatory. It was not published five successive days, as required by the ordinance, and the last day was Sunday. The notice here given was not sufficient. Cases already cited; *Keane v. Cushing,* 15 Mo. App. 96; *Keane v. Claussman,* 21 Mo. App. 485; *Galbreath v. Newton,* 30 Mo. App. 380, 393-4; *Hewes v. Reis,* 40 Cal. 255; 10 American & English Encyclopedia of Law, 290-1, note 1; 102 N. Y. 301. (5) The tax bill is and must be against the whole lot, not simply against the one who owns a strip of it along the street improved, and declarations 7 and 8 ought to have been given. *Steifel v. Brown,* 24 Mo. App. 103; *St. Louis v. Provenchere,* 92 Mo. 66.

ELLISON, J.—This action is on tax bills for work done in paving a street in the city of Sedalia under an ordinance of said city. The work was done and tax bills issued. The judgment below was for defendant, and plaintiff appealed.

The two questions presented by the case are whether the work was done as required by the ordinance, and whether the city council was authorized to let the contract to the plaintiff's intestate, he being a bidder, but not the lowest bidder, at the letting. The first question merely involves a construction of the ordinance. The construction placed upon it by the trial court, as near as we can gather from the record, is that the excavation preparatory for the boulders and gravel should be sixteen inches below the grade at the sides, and ten inches below at the center of the street. Our view is that the meaning of the ordinance is that the street was to be excavated ten inches below grade at the sides, gradually rising to a crown of four inches below such grade at the center of the street. The

street is then prepared for the superstructure of boulders and gravel of the required depth. Neither theory of the meaning of the ordinance seems to keep the center of the street within the grade line; and the construction we are putting upon it would allow the surface water from the street to run over adjoining property on the sides, unless the city has a system of placing the curbing above grade, since, by our construction, if the side of the street is excavated ten inches below grade, and then four inches of boulders and five inches of gravel are put upon it, it is brought back to only one inch below grade, which would not leave sufficient depth to protect adjoining property from street surface water, unless, as before remarked, the curbing is raised above grade. But at all events we can only interpret the ordinance as we find it.

The court found that the plaintiff's intestate was not the lowest bidder; and also found that one Anderson, who was the lowest bidder was a responsible bidder. The question is, had the council the power or the discretion to let the contract to the plaintiff's intestate? If the charter or ordinance of a municipality provide that the contract shall be let to the lowest bidder, a violation of this command of the law would be against the substantial rights of the taxpayer and would render a contract void which was let to one not the lowest bidder, in any case where such rejection of the lowest bid was an exercise of an arbitrary will on the part of the city authorities, without any showing that such authorities exercised their jurisdiction in that respect, by determining that the rejected bid was not the lowest and best bid. *People ex rel. v. Gleason,* 121 N. Y. 631. In such case, the duty of the city authorities is not wholly ministerial, it partakes sufficiently of a discretionary or judicial character, in the absence of fraud or misconduct, to render their conclusion or

decision binding. *Cleveland, etc., Co. v. Board of Fire Com.*, 55 Barb. 288; Elliott on Roads & Streets, 428, 441–2; *State ex rel. v. McGrath*, 91 Mo. 386. It ought hardly to be supposed that a law requiring municipal authorities to let a contract to the lowest bidder means absolutely that the contract shall be given to the lowest bidder without regard to his fitness, responsibility or capacity to perform the work. And generally such laws read to the lowest or best bidder, or lowest responsible bidder. In this case the ordinance required the contract to be let to the "lowest responsible bidder." It does not appear that the city authorities did not exercise their jurisdiction to determine who was the lowest responsible bidder in a proper manner. There is nothing in the case going to show fraud or to attack the *bona fide* conduct of the city officials intrusted with determining who was the lowest responsible bidder. Such matters should be made to appear, in order to overturn the contract. *People ex rel. v. Gleason, supra.* Though the presumption may be overcome, yet it is presumed that the city authorities have done their duty and have not abused their discretion. Elliott on Streets, 410, 411. It is true that Anderson, and not the plaintiff's intestate, was the lowest bidder and the trial court found that Anderson was a responsible bidder. But the trial court did not find that the *city authorities* so found him to be. The question was within the jurisdiction of that body.

There were objections to the testimony which was introduced to show the true grade of the street at the date of the improvement in order to sustain the defense that the work had not been done as required, with reference to the grade of the street. It is difficult to fully understand the bearing of some of this testimony, had on the issue, nor are we sure that we understand, to their full extent, the objections urged to this testi-

mony. As the case is to be reversed, we will state that the grade of the street must be fixed by ordinance; that whatever book or books of profile are referred to by the ordinance should be fully identified; that, if the ordinance and book referred to therein do not establish a grade to a reasonable degree of certainty, then it would be void, and the natural surface would be taken as the true grade.

The foregoing considerations lead to a reversal of the judgment, unless we find, as contended by defendant's counsel, that other portions of the record show the judgment to be for the right party. These tax bills are against lots 6, 7 and 8 which are adjoining lots. They face south on Fourth street (the street improved), the side of lot 6 being also on Ohio street. A strip of forty-four feet in width, along Ohio street, was sold off the north end of lots 6 and 7, such strip fronting out east on Ohio street. The point is made that the entire lot, including this strip off the north end, is liable for the improvement. We are not of this opinion. The charter is that "for the payment of the cost of such improvement the city register shall levy a special tax on the property abutting on such street, avenue or alley, according to the respective fronts of lots so abutting thereon, and according to the amount and cost of work done in front of, or adjacent to, such lots." Our interpretation of this provision is, that the improvement is charged against the property which abuts the street improved at the time the lien attaches, regardless of the depth of the original lot. The property benefited and, consequently, the owner benefited is the abutting property and owner. The abutting owner has abutting rights, privileges, conveniences and advantages not common to others. The word " adjacent," in the foregoing section of the charter, has reference to the work done on the street within a certain length, which is to

be levied as a tax on the abutting property according as the number of front feet is to the price of the whole work, both immediately in front and adjacent. The only authority cited bearing on the question is *Amery v. The City of Keokuk*, the words of the charter of that city being, "upon any lots or parcels of ground or *any part of either* of the same fronting upon, or lying along, the street." This is so different from the charter in this case as to render the case not applicable.

The next point relates to the notice given for the letting of the contract. The ordinance required that there should be published "in one or more of the daily papers published in Sedalia a notice stating that bids will be received  *  *  * at least five days before the time fixed for opening the same." The notice was published in a daily paper issuing every day except Monday, the day on which the bids were to be opened. It was inserted on the eleventh, thirteenth, fourteenth, fifteenth and sixteenth, which last day was Sunday. Plaintiff's counsel insist that, since notice is not required by the city charter, it is not essential, and that the ordinance requiring such notice is merely directory. We are not of this opinion. We expressly so ruled in *Galbreath v. Newton*, 30 Mo. App. 380. See, also, *Keane v. Cushing*, 15 Mo. App. 96. Notice of the letting of contract for public work, the cost of which is to be collected from the citizen, *nolens volens*, by special assessment of his property, is certainly a matter "which affects the substantial rights of" such citizens. When such is the case, there must be "a fair compliance with all the conditions precedent, whether prescribed by charter *or ordinance.*" *Cole v. Skrainka*, 105 Mo. 303. But the question remains, whether the notice as published is sufficient. The fact that the last publication was on Sunday does not affect the legality of this class of notices. *Taylor v. Palmer*, 31 Cal. 240. The

only other objections which can be urged are that it was not published on Monday, the day the contract was let, and that it was not inserted on the twelfth. Neither of these objections is sound, under the ruling of *German Bank v. Stumpf*, 73 Mo. 311. That was a case involving the publication of a notice of a deed of trust sale, but is applicable here.

Counsel makes the further point that the property-owners should have been given an opportunity to do the work themselves before it was let out by the city. Our answer to this is, that no such requirement is found in the charter or ordinances. Other points made in support of the judgment being for the right party are not deemed tenable. The judgment is reversed, and the cause remanded. All concur.