THE BRICK & TERRA COTTA COMPANY, Respondent, v. GEO. C. HULL, Appellant.

Kansas City Court of Appeals, April 25, 1892.

1. **Municipal Corporations:** SECOND-CLASS CITIES: LIABILITY FOR STREET IMPROVEMENT: STREET RAILWAY. By sections 1404, 1405 and 1406, the costs of all work on streets, etc., shall be charged as a special tax on lands on both sides of and adjoining the streets, etc., and no statute authorizes a special tax bill to be made out against the property of a street railway company for any part of the costs of an improvement made in a street over which it has built its track; such railway company has the right to remove its tracks from the street, and can in such event be in no way liable for the improvement of such street.

2. ———: ———: MATERIAL IN STREET IMPROVEMENT CONTRACT: ESTOPPEL. A defendant in an action to enforce a special tax bill is estopped to object that after the bids were made and accepted artificial stone was used instead of natural stone, as required in the contract, and that the council fixed the price thereof, when such substitution was made by the council at his request, and such artificial stone was used on his property with his actual knowledge and acquiescence.

3. ———: ———: IMPROVEMENT CONTRACT PERFORMED BY ANOTHER: ASSIGNMENT. Where a contract for street improvement has been substantially performed, it can make no difference that the work was performed by another; and in this case it appears that the trial court did not err in refusing to tell the jury if they found there had been an assignment of the contract there could be no recovery.

*Appeal from the Buchanan Circuit Court.*—HON. HENRY M. RAMEY, Judge.

AFFIRMED.

*Spencer, Burnes & Mosman,* for appellant.

(1) The court below should have directed a verdict for appellant. By section 1270 of the Revised Statutes of 1889, and under section 2 of special ordinance number 599 of the city of St. Joseph, it was the duty of the street-car company to pay for that portion of the street improvement between the tracks and eighteen inches on either outside. *Farrar v. St. Louis,* 80 Mo. 393. (2) Further we desire to add, as a reason why the trial court should have directed a verdict for appellant, these facts, as shown by the evidence: The general ordinances of the city provide the mode to be followed and the material to be used in street improvements, and that there were no specifications on file in the office of the city engineer, specially prepared for the work contemplated by the ordinance, at the time the ordinance was passed. That the city engineer instead of following the provisions of the general ordinance as they existed at the time the bids

were received chose to accept bids upon a contract (which he calls the specifications), prepared a long time prior for work on another street. The special ordinance, which is the basis of the tax bill sued on, did not refer, because it could not refer, to any specifications in the engineer's office, other than those which had prior thereto been adopted by the common council. These facts, under the rulings in the case of *Galbreath v. Newton*, 30 Mo. App. 380, made it the duty of the court below to order a finding for appellant, and are here submitted as a ground of reversal. (3) For another reason the trial court should have ordered the jury to find for appellant. We submit that under the authority of the last-mentioned case, which quotes approvingly *People v. Board*, 43 N. Y. 227, the contract upon which the tax bill was issued was not such as was advertised for bidders; but, on the contrary, the contract was changed and amended by the common council without advertisement and without authority. *Galbreath v. Newton, supra.* (4) We wish further to maintain that when the contract, upon which a tax bill is issued, is introduced in evidence, and the terms and conditions of said contract were not complied with, but the express terms thereof have been violated by the contractor, and such violation conclusively shown, that no recovery can be had by the party attempting to enforce such tax bill. The contract which the successful bidder entered into with the city contained the express provision that no "assignment, transfer or subletting" should take place; but the contractor, in violation of such stipulation, and possibly because of the change of the contract by the common council, did "transfer, assign and sublet" his contract to one Henry Dunn. (5) It was not claimed and will not here be claimed by respondent that the item for curbing could be recovered, except on the ground of

estoppel; and we maintain that none of the evidence admitted to prove an estoppel was competent. It is admitted that artificial stone for curbing was at no time contemplated until the council by its order directed the change in the contract, and appellant was estopped from denying the validity of such change, because at a time subsequent to such change he expressed himself as willing to have artificial stone in front of his property. No knowledge on his part of such change was attempted to be shown, and we, therefore, submit that the principle of estoppel has no application. *Galbreath v. Newton, supra.*

*B. R. Vineyard,* for respondents.

(1) In suits like this, seeking to recover for street improvements, only substantial compliance with the law is required. *Sheehan v. Owen,* 82 Mo. 458; *St. Louis v. DeVore,* 44 Mo. 139; *City of St. Joseph v. Anthony,* 30 Mo. 542; *Cole v. Skrainka,* 105 Mo. 309; s. c., 37 Mo. App. 420; *Kiley v. City of St. Joseph,* 67 Mo. 491. (2) Contracts for street improvements are assignable. *City of St. Louis v. Clemens,* 42 Mo. 69; *Leahy v. Dugdale,* 27 Mo. 437; *Sheehan v. Owen,* 82 Mo. 461. The exercise of the right of the city, under the contract for the work sued for, to annul the contract and relet the work, if it should be assigned by the contractor, was optional. The city did not, and was not bound to, exercise the right of annulment, even if the proof had shown an assignment. The city accepted the work and issued the tax bills. It waived the right to forfeit the contract. Bishop on Contracts, secs. 94–100, 789–797; *Bernard v. Ins. Co.,* 38 Mo. App. 107. (3) Besides there was no assignment of the contract in this case—simply an employing of Dunn by the contractor to do the work for him, the contractor still.

being liable on his bond and still looking after the work to see it well done. The tax bills were assigned by the contractor to plaintiff. Such assignment is specially provided for by the statute. 1 R. S., sec. 1407. (4) Including in the tax bills more than is properly due to the contractor will not invalidate the bills. *Neenan v. Smith*, 60 Mo. 292; *Bank v. Arnoldia*, 63 Mo. 229; *Bank v. Nelson*, 64 Mo. 418. And only by tendering the correct amount can the debtor in the tax bill stop the running of interest on that which is really due. *Neenan v. Smith*, 60 Mo. 292. (5) After proof of the assent of defendant to the change from natural to artificial stone curbing, which was shown by the evidence to be better, and to have cost less than the natural stone, the tax bill became and was "*prima facie* evidence of the validity of the bill, of the doing of the work, and of the furnishing of the materials charged for, and of the liability of the property to the charge stated in the bill." Plaintiff's first instruction tracked the law. 1 R. S., sec. 1407; *Ward v. Green*, 7 Mo. App. 82; *Ess v. Bouton*, 64 Mo. 105. (6) The ordinance for the construction and maintenance of the electric street railway on Francis street, read in evidence by defendant, was a mere license, which the company had a right to abandon at any time. The statute gives a railroad company the right to change its line of road or any part of it, at any time. R. S. 1889, sec. 2559; *People v. Railroad*, 24 N. Y. 263.

SMITH, P J.—This was a suit instituted to enforce the lien of a special tax bill issued by the city of St. Joseph under the powers conferred by the statutes upon cities of the second class, of which it was one. The property-owners on Francis street, among whom was defendant, petitioned the city council to have a part of said street paved with brick. At the time the

petition was signed and presented, that portion of the street sought to be paved had a street railway track laid down thereon. The city had, by an ordinance, passed in conformity to its charter, section 1270, Revised Statutes, previously granted the street railway company owning said track permission to lay it down in the street. The ordinance required the said street railway company to pave "the space between the rails and for eighteen inches outside of the rails   *   *   *   with the same kind of paving with which the streets are now or may hereafter be paved, and by them kept in repair." The street railway company, by consent of the city, had removed its track from the street before the improvement thereof was begun.

Neither in the petition, ordinance, specifications or contract for the improving of said street was there any reference made to said street railway track. The plaintiff had judgment, and the defendant appealed.

I. The defendant's first ground of complaint is that it was the duty of the street railway company to pay for paving the space between its rails, and for eighteen inches on the outside thereof, which it did not do. He insists that the part of said street improvement which was chargeable to said street railway company has been erroneously charged against his property and that of the other abutting owners. We do not think this contention can be sustained. By reference to the statute, sections 1404, 1405, 1406, which is the charter of the city, it will be seen that it is there provided that "the costs of all work on streets, avenues and highways or any part thereof shall be charged as a special tax on lands on both sides of and adjoining the street, avenue or highway or part thereof." There is no statute which authorizes or requires a special tax bill to be made out against the property of a street railway company for any part of the cost of an improvement made in a street

over which it has laid its track.    It is not disputed but that the street railway company not only removed its track from the street, but that it had the lawful right to do so, before the work of improving the street begun. The whole theory of street improvement provided by the statute is that the property benefited thereby must be charged with the cost thereof.    It may be, and doubtless is, true, that if the street railway company had continued to occupy a part of the street with its track that it would have been liable for such improvement to the extent of the cost of paving the space between its rails and for eighteen inches outside thereof.    As to whom liable, or how such liability should be enforced in such case, we need express no opinion as the question does not arise in the case.    It nowhere appears that the street railway company was bound to perpetually main- tain its track on said street.    Its duty to pave was coextensive with the existence of its street franchise. If its license to occupy the street with its railway track was revoked by the city, the corresponding duty to pave the space required by the ordinance necessarily termi- nated.    How could the railway company or the con- tractor pave the space between the rails and for eighteen inches on the outside thereof, if there was no such rail- way track in the street?    How could it be benefited in such case by the street improvement?    What principle can be invoked to make it liable for any part of that improvement under such circumstances?    It must be presumed that the defendant had notice of the provis- ions of the ordinance granting the street railway com- pany the right to use the street.    He must be held to have known when he petitioned the common council to order the improvement of the street that the duty of the railway company to pave did not extend beyond the time when it should cease to maintain its track on the street under the license granted it by the city.    The

defendant petitioned the city to improve the street when
he knew that the duty of the street railway company to
pave the space required by the ordinance granting it
the right to occupy the street with its track was con-
tingent in its nature, and not a continuing one. We
cannot discover that the defendant has any just grounds
for complaint on this account.

II. The defendant further contends that the trial
court should have directed a verdict for the defendant
for the reason that the city in making the improvement
of the street failed to follow the mode and to use the
material prescribed by the general ordinances of the
city, in that there was no plan and specifications of
the proposed improvement on file in the office of the
city engineer when the special ordinance was passed
requiring such improvement to be made or at the time
the notice was given that bids therefor would be
received by the engineer. The evidence conduces to
show that, previous to the passage of the ordinance
providing for the improvement of Francis street, there
was on file in the engineer's office specifications for all
street-paving with brick. There was also a plan show-
ing the heights of the curbing along the street, a plan
showing the elevation and lines of the curbing along
the street, and the condition in which it existed before
the work was done on it. It showed the height of the
curbing and the width of the street and curbing. There
was some evidence tending to show that this plan, with
the specifications, was in the engineer's office before the
special ordinance was passed or the notice for the bids
for doing the work given. This, it seems to us, suffi-
ciently met the requirements of the ordinance for all
practical purposes. The specifications called for arti-
ficial stone curbing. General ordinance number 158
required that the material for all street curbing should
consist of the best quality of lime or sand stone.

The notice that bids would be received for the work called for natural stone. The bids were accordingly made.

The objection urged is, that the specifications called for artificial stone for the curbing, while the general ordinance, notice and bids called for natural stone. The bidders, who doubtless knew the requirements of the general ordinance, made their bids as if natural stone had been called for in the specifications. We are inclined to think that the plan and specifications were in substantial compliance with the ordinance in every essential particular, except as to the natural stone. We should deem this departure fatal, were it not that the notice and bids were for the kind of stone required by the ordinance, and, besides this, it does not seem to have misled bidders or to have operated prejudicially to the interests of the abutting property-owners in any way. It is to be observed, too, that the infirmity in the case does not arise from a want of power, but from the mode of exercising it. Now, defendant, after the bids had been received, for natural curbing, petitioned the common council to substitute artificial stone in the place of natural stone, which was accordingly done. The contract was let to Gibson, who was the lowest bidder for the work. The council fixed the price of the artificial curbing, so that there was no competition among the bidders as to that item; but as this was brought about by the action of defendant and the other property-owners themselves, they cannot complain of the matter. The defendant not only requested the city council to change the curbing from natural to artificial stone, but he also directed the contractors to remove the old curbing in front of his property, and put in new curbing, which he knew was by the contract to be of artificial stone. He saw the contractor put in the artificial curbing in front of his property, and made

no objection whatever thereto. It, therefore, appearing that the defendant, with others, having procured the substitution of the contract made for the one contemplated by the ordinance, he is by every principle of right estopped to deny the validity of the assessment. And, even if he had not procured the change in the contract, he would be estopped on the further ground that he had actual knowledge of the change, and acquiesced in the work done under it. These views are supported by the rulings made in *Galbreath v. Newton*, 30 Mo. App. 380, and in *Sheehan v. Owen*, 82 Mo. 464.

II. There is no dispute but that there was a substantial compliance with the contract for doing the work. The mere fact that the contractor caused the work to be performed by another was, we think, of no consequence. It is not pretended that there was a formal assignment of the contract. Gibson entered into bond for the faithful performance of the work. When the work was performed and accepted by the city, the tax bills therefor were issued to him. No one was prejudiced by his action in causing the work to be done by another, Besides this, it may be well questioned whether the property-owners would be permitted to defeat the tax bills where there had been substantial compliance with the contract, and the work accepted by the city, even if there had been an assignment. We do not think the court erred in its action in refusing to tell the jury, if they found there had been an assignment of the contract, there could be no recovery.

The case was fairly tried, and, discovering no error prejudicial to the plaintiff on the merits, we must affirm the judgment. All concur.