THE CITY OF BUFFALO, Plaintiff, *v.* INTERNATIONAL RAILWAY COMPANY, Defendant.*

Supreme Court, Erie County, January 15, 1930.

*Gregory U. Harmon, Corporation Counsel [Fred C. Maloney, Assistant Corporation Counsel], for the plaintiff.*

*Killeen & Sweeney [Henry W. Killeen and James C. Sweeney of counsel], for the defendant.*

LYTLE, J. The facts herein involved are not in dispute to any material extent.

---

* See, also, 135 Misc. 504.

The defendant, International Railway Company, is a domestic street railway company and the proper defendant in this action, operating upon various streets in the city of Buffalo.

The consent, grant and franchise for said operation were made about December 24, 1895, approved by the mayor of the city of Buffalo, January 6, 1896, and accepted by the defendant, or its predecessors, January 23, 1896, in the following manner: " The said Company hereby accepts all the terms and conditions of said grant or franchise, hereby expressly waiving any and all objections to the reasonableness or legality of any provisions of the same or any part thereof, or as to the legal right or authority of the City to impose the same."

This constituted a contract between the parties. Two causes of action are alleged in the complaint, the first involving for determination by the court:

(a) Whether the defendant, upon the removal of its tracks in Walden avenue, from the southeast curb line of Genesee street to the New York Central Railroad subway, is required to *repave and put in good condition and repair* that portion of the street from which its tracks may be removed?

The second cause of action involving:

(b) Whether the defendant, upon the removal of its tracks in Elm street, from the north curb line of Swan street to the south curb line of Best street, is required to repave and put in good condition and repair that portion of the street from which its tracks may be removed?

Two other questions are referred to in the complaint as follows:

(c) Whether the repavement and repair of that portion of the street from which defendant's tracks may be removed is to be made with the kind and character of pavement specified by the plaintiff's commissioner of public works?

(d) Whether the defendant is required to repave and put in good condition and repair the space now occupied by its tracks in Walden avenue, from Genesee street to the New York Central Railroad subway, and in Elm street, from Swan street to Best street, when directed so to do by the plaintiff's commissioner of public works?

It seems that the Public Service Commission of the State of New York, on June 27, 1928, and after a hearing which was held on or about June 18, 1928 (Case No. 4915): " Having determined that operation of said portions of said route (including the portions in question in this litigation) of said International Railway Company is no longer necessary for the successful operation of its route and the convenience of the public, it is

" ORDERED, That the said declarations of abandonment, dated the 4th day of January, 1926, adopted by said International Railway Company, be and the same hereby are approved, and that the Secretary of this Commission be and hereby is directed to endorse the approval of the Commission thereon or annex the same thereto."

The Commission, in rendering its decision (Exhibit " A," attached to the complaint), stated, among other things, that " The Commission is without power and does not pass upon the rights of the respective parties growing out of the aforesaid grant [referring to the franchise] or otherwise. The only question before the Commission for its decision is as to whether or not that part of the route of the Company included in the streets in question should be abandoned, and upon that question alone we have decided to grant the petition."

Referring to Walden avenue, it appears that:

In 1897 the tracks were laid.

In 1900 the first asphalt pavement was laid.

On September 10, 1924, the city declared its intention to repave Walden avenue.

In 1926 abandonment of the tracks and railway was declared by the defendant.

About May 29, 1928, operation was entirely discontinued.

About November 27, 1928, this action was commenced.

May 8, 1929, the city directed the defendant to remove its tracks and the tracks were thereafter removed.

In 1929 the street was repaved by the city.

With regard to Elm street:

In 1897 tracks were laid, and relaid in 1909.

In 1909 Elm street was paved with block stone in the street railroad therein, and asphalt in the other portions.

About April 23, 1927, operation was discontinued and at that time Elm street required repaving.

It appears from the evidence in the case that the city determined that the portions of the streets in question required repaving; that the pavement should be uniform; that the defendant should pay for that portion presently or formerly occupied by its tracks and roadway prior to the abandonment thereof.

The defendant, while not conceding the necessity of repaving, does not seriously dispute the question, so far as the requirements of the city are concerned, but takes the position that having legally abandoned the use of such streets, or portions thereof, it is not liable for repaving; that in any event, the limit of its liability, if any, is upon and concerned with the removing of its tracks and

appurtenances thereto to leave the street in as safe condition as the street railway found it. It is claimed that anything further than this is the burden and responsibility of the city.

Referring to the question (a), the original franchise provides, among other things: " Said Company shall also repave and put in good condition and repair any street from which its tracks may be removed, after ceasing to operate its railroad in any such street or any part thereof."

An examination of section 4 of the said franchise would seem to indicate that it was within the contemplation of the parties that, in the natural course of progressive events, the character of the pavement upon the city streets might from time to time change, and that the defendant would thereupon be required to change the portion occupied by it. This is indicated by reference to that portion of section 4, as follows: " That whenever the pavement on any street in which the tracks of said Company shall be laid shall be repaired or repaved in such manner as to change the character of such pavement; said Company shall at the same time and in the same manner repave or repair the portion of the street occupied by its tracks so as to conform with the remainder of the street."

The construction by the defendant, in the first instance, was in conformance with the street pavement as it then existed. The use, wear and tear of the street occupied by the tracks continued at all times, not only by the defendant, but necessarily by the traveling public. Traffic has changed during the last thirty years. The one or two-ton load of the horse has been succeeded by the two to ten-ton load of the truck, and pavements must necessarily change. In view of the language of section 4, it would not be reasonable to say that a removal of the tracks could be followed by a replacement not in conformance with the balance of the street pavement, especially when the franchise provides for complying with the requirements of the board of public works (now the commissioner of public works), section 4 further providing that " the kind or quality of pavement to be used, the manner and the time of laying the same, and of repairing and keeping the same in repair * * * shall be under the supervision, direction and control of the Board of Public Works [now the Commissioner of Public Works], the directions of which and the requirements herein contained, the said Company, by its acceptance of this grant, agrees to submit to, abide by and consider as conclusive, final and binding."

Also, " The said Company shall pave and keep in repair, in the manner and to the extent above provided * * * when it is intended by the authorities of said City to pave any such street,

upon notice from the said Board of Public Works and Common Council requiring the said Company so to do."

The franchise does not say replace pavement. It says repave, which means to lay or cover with material so as to make a firm, level surface for travel. It would be only a waste of time and material to replace the space caused by the removal of the tracks by any substance which did not conform with the requirements for street purposes at the time of abandonment or removal of the tracks. The city would only have to do it over again, in order to have a street uniform in construction.

Under the terms of this franchise the defendant took over the portions of the street in question suitable for the then existing traffic conditions, converted those portions to railroad use, exercised control until it elected to abandon it. It should, therefore, logically follow that restoration now be made suitable for the present existing conditions, especially when the franchise recites that "The defendant shall also repave and put in good condition and repair * * * under the supervision, direction and control of the City." And also provides: "That whenever the pavement on any street in which the tracks of said Company shall be laid, shall be repaired or repaved in such manner as to change the character of such pavement, said Company shall, at the same time and in the same manner, repave or repair the portion of the street occupied by its tracks so as to conform with the remainder of the street."

This the defendant has not done, and refuses so to do.

The city must keep its streets adequate and reasonably safe for travel. It is, therefore, impelled to go forward with the necessary constructive paving work, and seek relief which it claims herein.

Defendant calls attention, under point I of its brief, to the case of *Brick & Terra Cotta Co.* v. *Hull* (49 Mo. App. 433) as "a situation like the situation presented in the present action." The *Brick & Terra Cotta Co.* case arose under a city ordinance. At page 438: "The city had, by an ordinance passed in conformity to its charter, section 1270, Revised Statutes, previously granted the street railway company owning said track permission to lay it down in the street. The ordinance required said street railway company to pave the 'space between the rails and for eighteen inches outside the rails * * * with the same kind of paving with which the streets are now or may hereafter be paved, and by them kept in repair.'"

It was decided in the *Brick & Terra Cotta Co.* case that upon the lawful removal of the street railway company's tracks from the street its obligation to pave ceased; that "its duty to pave was coextensive with the existence of its street franchise."

This case was decided in 1892.

The franchise and contract under consideration in the case at bar was in 1895, three years later.

In New York State we have section 178 of the Railroad Law (as amd. by Laws of 1921, chap. 433), similar to the ordinances referred to in the *Brick & Terra Cotta Co.* case. The *Brick & Terra Cotta Co.* case involved the question of legislative authority and regulation, but in the case at bar we are not so much concerned with legislative regulation. Here we have a franchise and contract, and the question involves primarily a construction of the contract. The franchise and contract go farther than statutory regulation and authority and are the basis of the alleged obligations presently existing between the parties to this litigation.

The franchise, at section 4, also provides: "Said Company [International Railway Company] shall also repave and put in good condition and repair any street from which its tracks may be removed after ceasing to operate its railroad in any such street or any part thereof," "repair" meaning to restore to a sound state after depreciation. Thus the obligation is to repave and put in good condition, and restore to a sound state; and in view of all of the provisions of section 4, "the kind or quality of pavement" such as the city shall direct.

Without any franchise and contract, the necessity of repairing and repaving the streets is to be determined by the city. (*City of New York* v. *Metropolitan St. Ry. Co.*, 130 App. Div. 842.)

The city may determine the material with which the paving shall be done. (*Conway* v. *City of Rochester*, 157 N. Y. 33.)

The city may require a better and more expensive material. (*Mayor, etc., of N. Y.* v. *H. B., M. & F. Ry. Co.*, 186 N. Y. 304.)

This is so by authority of section 178 of the Railroad Law of the State of New York, but the franchise and contract under consideration go much farther than this. They provide specifically, in case of abandonment, after ceasing to operate its railroad in any such street or part thereof, that the defendant "shall repave and put in good condition and repair" as hereinbefore stated.

"Where a street railway company has, with its tracks, occupied streets in the city with the latter's consent and on condition (a) that it pave its right of way, and keep the same in good repair, or (b) that it pave its right of way in a specified manner superior to the then construction of the streets and keep said paving in good repair, the city may, upon adoption and upon notice to the company of the adoption of an improved pavement for the rest of the street, with which the original pavement of the right of way is incongruous and practically impracticable, require the company, the pavement on its right of way being in fact out of repair, to replace the same with

a pavement reasonably corresponding with the street pavement adopted." (*Reading* v. *United Traction Co.*, 202 Penn. St. 571.)

Where, under the charter and ordinance, a railroad company was required to keep the street "in perpetual good order and repair from curb to curb, its whole length," it was held that under the charter and ordinance the railroad company was bound to keep the street cleansed from dirt and filth necessarily or casually accumulating thereon in its ordinary use as a public thoroughfare. (*Pittsburg & Birmingham Pass. R. R. Co.* v. *Burgess & Town Council*, 51 Penn. St. 41.)

These two cases illustrate that in other jurisdictions where the conditions have been fixed, either by statute or ordinance enacted pursuant to legislative authority, and especially by agreement and contract, as in the present case, the terms of the agreement control.

Parties to a contract "can insert in it such conditions and agreements as they choose * * *. And when parties have made their own contract, have agreed upon their own terms and assented to certain conditions, the courts cannot change them and must not permit them to be violated or disregarded.

"The conditions may seem harsh and useless, * * * and if they have not been waived, or if one party has not been prevented from complying by the act of the other, all conditions must be respected and enforced." (*Whiteside* v. *North American Acc. Ins. Co.*, 200 N. Y. 320, 325, 326.)

In view of the premises, the questions involved in (a), (b), (c) and (d) of the complaint hereinbefore set forth, are hereby answered in the affirmative, and judgment granted herein as prayed for in the complaint.

The plaintiff should have a declaratory judgment adjudging and decreeing:

(1) That the defendant, upon the removal of its tracks on Walden avenue, from the southeast curb line of Genesee street to New York Central subway, is required to repave the street railway therein with asphalt pavement to conform to the pavement in the balance of the street.

(2) That the defendant, on the removal of its tracks in Elm street, from the north curb line of Swan street to the south curb line of Best street, is required to repave the street railway area with asphalt pavement to conform to the pavement in the balance of the street.

Let findings be prepared and submitted accordingly.