(Superior Court of Cincinnati.)

E C. COPPIN, a taxpayer, v. AUGUST HERMANN et. al., COMMISSIONERS OF WATER WORKS OF THE CITY OF CINCINNATI et al.

---

(1). Paragraph eighth, of section 7, of the act of April 24, 1896, (92 O. L., 606) "to provide for waterworks purposes in cities of the first grade of the first class", requires that the commissioners appointed under said act, in making contracts, "shall enter into contract with the lowest and best bidder," etc.; this requirement confers upon said commissioners, by implication, a discretion to determine who is the lowest and best bidder.

(2). This discretion is a "sound discretion"; that is, not a power of mere arbitrary determination, but a power of decision and determination to be based upon facts, and to be made in good faith and without collusion or fraud upon the part of such commissioners, and after a hearing upon such facts, with full opportunity to those interested to be present and heard at such hearing.

(3). Officers to whom public duties are confided by law, are not subject to the control of the courts in the exercise of the judgment and discretion which the law imposes on them as a part of their official functions.

(4). If the bare act or decision of the commissioners, in awarding a contract, is alone attacked, the courts cannot interfere, because that act or decision is by the law committed to the commissioners, and the courts cannot be substituted for them.

(5). But if the means, manner or method, by which the act or decision is reached, be wrongful, fraudulent, collusive, or arbitrary, the courts can inquire into these facts; and, if found true, they will set aside the act or decision which is the result of them.

(6). The courts, however, will not presume wrong, illegality, collusion or fraud upon the part of public officials, and, if an act or decision, the result of an exercise of discretion, be attacked on these grounds, the facts showing the wrong complained of must be specially set out.

(7). The plaintiff seeks to enjoin an alleged illegal award of a certain contract. His petition avers that, F. W. & Co's bid was the lowest and best bid; that H's bid was not the lowest and best; yet, the commissioners awarded the contract to H. No other facts are averred. On demurrer filed to the petition, held, that the petition does not set forth facts sufficient to justify the court in interfering with the award of the commissioners.

(Decided June 12th, 1899.)

---

DEMPSEY, J.

The plaintiff sues as a taxpayer of the city of Cincinnati, under section 1778 of the Revised Statutes, and making the formal allegations of a request upon, and the refusal of, the Corporation Counsel to bring such as suit, seeks to enjoin the said city of Cincinnati and the other defendants, who constitute the Board of Trustees known as the "Commissioners of Water Works" of said city, and who were appointed under the act of the General Assembly to be found in Ohio Laws, 92 V., 605-613, inclusive, from entering into, executing or performing a certain contract which said commissioners attempted, so it is alleged, to award to one A. J. Henkel on the 12th day of May, 1899.

The substantial averments of plaintiff's petition are as follows: That said commissioners duly advertised that they would receive sealed proposals until twelve c'clock noon, Friday, April 28, 1899, for the furnishing of the necessary labor and materials for the construction of certain settling reservoirs and the laying of certain pump mains, and the miscellaneous work in connection therewith, in accordance with certain plans, specifications and detail drawings on file in the office of the chief engineer of said commissioners; that said work was to be paid for as stipulated in the form of contract on file in the office of said commissioners; that said work involved an expenditure, estimated by the said chief engineer, of about $1,263,700.00; that to the contract and specifications aforesaid were attached on approximate estimate, made by said engineer, containing an itemized statement of the quantities of the various kinds of work to be done and for which labor and materials were to be furnished, and in accordance with which the amount of

each bid was to be computed, for the purpose of determining under the law who should be the lowest bidder for said work; that copies of the contract, specifications and approximate estimate as aforesaid, were furnished to the bidders; that, among others, Folz, Willard & Co. and A. J. Henkle were bidders on said work: that the bid of Folz, Willard & Co. was accompanied by a bond in the sum of $25,000.00 as fixed and on a form as approved by said commissioners, signed by sufficient sureties to the satisfaction of said commissioners, conditioned for the acceptance of said contract, if awarded to them by said commissioners, and that they would give bond for the performance of said contract and fully comply with the terms of division eight, of section 2435-7, of the Revised Statutes; that calculated upon the quantities furnished and the approximate estimate, as aforesaid, the bid of Folz, Willard & Co. amounted in the aggregate to $1,039,650.53, and the bid of A. J. Henkel, calculated in the same manner, amounted to the sum of $1,171,743.50; that the bid of said Folz, Willard & Co. was the lowest and best bid for said work, and was so reported to the said commissioners; that said commissioners did not award said contract to said Folz, Willard & Co., who were the lowest and best bidders for said work, but awarded said contract to said A. J. Henkel, whose bid was $132,092.97 higher than the bid of said Folz, Willard & Co., and who was not the lowest and best bidder for said work; that said commissioners threaten to and will, unless restrained, enter into and carry out said illegal contract, and pay the said A J. Henkel the said sum of $1,171,734.50, for said work aforesaid out of moneys belonging to said city of Cincinnati under their control; and an injunction is prayed against the defendants from entering into, carrying out or executing the said contract with said Henkel. By way of explanation of the reference in the petition to division eight, of section 2435-7 of the Revised Statutes, it may be said that the act

of April 24, 1896, (92 v. 606-613,) which creates said Commissioners of Waterworks and prescribes their powers and duties, has been incorporated into Judge Bates' edition of the Statutes of Ohio as sections 2435-1 to 2435-18 inclusive, and can be found at pages 1922-1227 of the first volume of Bates' Annotated Statutes of Ohio.

The defendants demur generally to plaintiff's petition. The defendants' contention is that the act of 1896 confers upon the Waterworks Commissioners a discretion to determine who is the lowest and best bidder; that the determination of the commissioners as to who is the lowest and best bidder is in the absence of fraud, collusion, or want of good faith, binding upon, and unreviewable by, the courts; that the averment of the petition that Folz, Willard & Cc. were the lowest and best bidders is not such an averment of fact as is admitted by the demurrer to be true, for the substantive fact to be established is not who in reality was the lowest and best bidder, but who in the judgment of the commissioners fairly, reasonably and honestly, although mistakenly, exercised, was the lowest and best bidder; and that, before the decision of the commissioners can be put in question and they called upon to justify their award, there must be pleaded all the facts and circumstances specifically which cast suspicion upon the honesty and fairness of the commissioners' judgment.

Plaintiff contends that no discretion whatever is granted to the commissioners; that the right to contract is determined by the lowest bid coupled with the execution by the bidder and acceptance by the commissioners of the guaranty that he, the bidder, will accept the contract if awarded to him; that the execution and acceptance of this guaranty is in effect the contract subject only to the condition that the bidder's figures shall be the lowest, and when ascertained to be the lowest, the contract becomes absolute, and the bidder has the right to demand the formal execution and delivery of a contract for the work. In determining which is the

sounder contention a review of the provisions of the act of 1896, pertinent to the question at issue, will not be amiss at this point. Sections 1, 2, 3 and 4 provide how the board may be called into existence, for the appointment of its members, their qualifications, compensation and organization. Section 5, among various other things, provides that the commissioners "may adopt definite plans and specifications providing for the construction of such (water) works, if there be none existing, or for an enlargement, extension, improvement or addition to existing waterworks * * *." Section 7 provides that "said commissioners in constructing such works, or such enlargements, extensions, improvements or additions, shall also have power and authority and be governed in respect of contracts as follows:

"First. To make contracts * * *."

"Second * * * Said commissioners shall, before entering into any contract cause plans and specifications, detailed drawings and forms of bids to be prepared, and careful estimate of cost to be made; and when adopted by them, they may, in their discretion, cause the plans and drawings to be multiplied and printed, * * * and the specifications and forms of bids, contracts and bonds to be prepared, and have the same printed for distribution among the bidders.

"Third. All contracts shall be made in writing in the name of such city and signed by the president and clerk of said commissioners and by the contractor * * *."

"Fifth. Said commissioners shall not enter into any contract for work in the construction and completion of said waterworks system, without first causing thirty days' notice to be given in one or more newspapers of general circulation in such city that sealed proposals will be received for doing the work or furnishing the materials * * *."

"Seventh. All bids shall be enclosed in a sealed envelope and deposited with the clerk of said commissioners; and such sealed envelopes

shall have endorsed thereon the nature of the same and the name of the bidder; and all bids shall be opened at a regular meeting of the commissioners, and at an hour to be indicated in said notice. Each bid shall be accompanied with a bond in a sum to be fixed by said commissioners, signed by sufficient sureties, for the acceptance of the contract if awarded by the commissioners; * * * and in case of refusal by the bidder to whom the award is made to enter into contract according to his bid within such reasonable time, as the commissioners may determine, said bond shall be put in suit, and the amount collected paid into the fund hereinafter provided; * * *."

"Eighth. Said commissioners shall enter into a contract with the lowest and best bidder, upon his giving bond to such city, with sureties as the commissioners shall approve, that he will perform the work and furnish the material in accordance with his contract * * *; and on the failure of such bidder, within a reasonable time to be fixed by the commissioners, to enter into bond with the sureties before provided, a contract may be made with the next lowest and best bidder, and so on until a contract is effected with a contractor giving bond as aforesaid; provided that the commissioners * * * may reject any and all bids." The petition when subjected to the test of the various requirements of the act of 1896, shows that the contract complained of was one within the general power and authority of the Commissioners to engage in as conferred by division first, of section 7, of said act, and also, that the preliminaries to said contract required by division second and fifth of said section 7 had been fully complied with by said Commissioners. The third division of said section is not material to the present controversy, as the presumption is that the final contract whether with Folz, Willard & Co., or with A. J. Henkel, would be in writing and executed as required by said division third. The petition shows that Folz, Willard & Co. complied with the provisions of

the seventh division of said section 7, as to the requisite bond accompanying their bid, which bond was conditioned that they would accept the contract if awarded to them, and was signed by sufficient sureties to the satisfaction of the Commissioners, but there is no averment whatever as to the fact of Henkel having furnished or not a like bond, but as no point is made on that omission, it will not be considered in this opinion. Nor is there any averment on the part of plaintiff that Floz, Willard & Co. were able, ready and willing to give the bond required by division eight of said section in case the contract was awarded to them either by the Commissioners themselves, or through the instrumentality of the courts.

The want of this averment, however, is not complained of by defendants, and, in fact, it seems to be tacitly agreed between counsel that the sufficiency of the petition shall be determined solely by the averments which refer to the award of the contract to A. J. Henkel, and which necessarily involve a construction of the powers, duties, and discretion, if any, of the Commissioners in making such award. Coming to this point then, it seems to me that the contention of plaintiff's counsel that Folz, Willard & Co.'s bid when accompanied by the required sufficient collateral guaranty, and when on computation found to be the lowest bid, in itself constituted the contract with the Commissioners, is only a begging of the real question in the case. This bid or proposal was only an offer to do the work; it did not, and could not, become a contract with the city or the Commissioners until it was accepted by the Commissioners; there was no meeting of the minds until acceptance; and that acceptance is manifested by the award.

Now, if the lowest bid accompanied by a satisfactory preliminary bond is to be considered per se the best bid, then under the mandatory provisions of division eight of section 7, it was the duty of the Commissioners to award the contract to Folz, Willard & Co., and they could be compelled to make such an award. If, on the other hand, such lowest bid, with its accompanying bond, is not to be considered the best because it is the lowest, but a right of decision is left to the Commissioners to determine which is the lowest and best bid, no contract can be made or considered to be made until that determination is had. This accompanying preliminary bond does not add any force to the degree or quality of the bid or bidder, and the statute does not intend that it should. The object in requiring it was to protect the city from loss in case an award should be made to one who would finally repent him of his bargain, and refuse to sign the final contracts. Division third of section 7 requires that all contracts shall be in writing in the name of such city, and signed by the president and clerk of said Commissioners, and by the contractor. Now, after an award made, it was necessary to the final consummation of the negotiations that this ultimate contract be signed by the contractor. A bidder to whom an award was made might, between the award and this finality, recede to the city's loss in many ways; and to cover a loss of this kind this bond was undoubtedly intended. And this brings us to the question, "Does the statute give the Commissioners any power or discretion to adjudge who is the lowest and best bidder?" This question of discretion has been fought over several times in the supreme court of Ohio in cases arising under statutes authorizing the erection of public buildings, and, in which statutes, after providing, as in the case of the law under consideration, for the making of preliminary plans, specifications, detailed drawings, bills and schedules of materials, and estimate of approximate cost, it was also provided that the authorities having the improvement in charge, should, after the usual advertisements for bids or sealed proposals, award the contracts to the person or persons who shall offer to perform the labor and furnish the materials at the lowest price, and give good and sufficient bond for the faithful performance of their contracts in accordance with the

plans, descriptions and specifications. In the case of Beaver & Butt v. The Trustees of the Blind Asylum, 19 Ohio St., 97, decided in 1869, it was decided that such provisions in the act were mandatory, and that the lowest bidder who furnished a good and sufficient bond as provided by the act was entitled to the contract. This decision was followed by the cases of Boren & Guckes, et al., v. The Commissioners of Darke county, known as the Darke county cases, 21 Ohio St., 311, in which the same doctrine was announced; but neither of the cases presented the precise point of the commissioners or officers having or seeking to decide between lowest bidders, bidding on the exact plans, specifications and estimate advertised. In the Darke county cases, the court made use of the following language: "The statute under which the parties were acting leaves little discretionary power to be exercised by the commissioners, but they are vested with this power as to the sufficiency of the bond required of the bidder by the act, to entitle him to have the contract awarded to and made with him. Undoubtedly this discretion must be exercised in a reasonable and proper manner."

Prior to these cases in 19 Ohio St. and 21 Ohio St, the supreme court had presented to it in the case of State ex rel., v. The Commissioners of Printing, 18 Ohio St., 386, the question whether section second, of article 15, of the constitution of 1851, and the statutes enacted under it, providing that the public printing shall be let upon contract by the commissioners of printing to the "lowest responsible bidder"—the commissioners have, in any supposable case, discretionary power to refuse a contract with the lowest responsible bidder, but the court did not deem it necessary to pass upon the question. In the case of State ex rel., v. Commissioners of Shelby county, 36 Ohio St., 326, the question was raised because of a conflict of statutes, one of the statutes, passed in 1869, being the statute involved in the Darke county cases, supra, and which provided of

course for an award to the lowest bidder. Subsequently to this, in 1877, a second act was passed which required, in certain cases, public officers charged with letting contracts to award the same to the lowest and best bidder, and in terms repealed all laws and parts of laws inconsistent with it.

Both of these acts were carried into the Revised Statutes, the act of 1877 as section 947, and the act of 1869 as section 799. The court seemed to think there was a want of harmony between these two acts; but, at page 329, they continued as follows: "Without stopping to inquire whether the commissioners would be bound by section 799 to award the contract to the lowest bidder, if in their judgment the public interest required his bid to be rejected and new proposals to be invited, is is very clear that section 794, both in the terms it employs and in the purpose manifested by its language, confers upon the commissioners discretionary power. By its provisions they are required to determine, not merely who offers to do the work and furnish the materials at the lowest price, but who is the lowest and best bidder."

And at the close of the opinion the court says: "If the commissioners were required at all events to award the contract to the one offering to perform the labor and to furnish the materials at the lowest price, to determine which would be a mere matter of figures, it would not be difficult for bidders so to combine as to secure the work at the full estimate of the architect. The statute was enacted for the benefit of the public, and not for individual bidders, and it should be executed with sole reference to the public interest."

In The State v. Commissioners, 39 Ohio St., 188, these two acts of 1877 and 1869, as sections 794 and 799, respectively, of the Revised Statutes, came again under review as applied to a state of facts which clearly and squarely presented the question as to the right of public officers to determine between two or more bidders, each bidding on the same advertised

plans, specifications and estimates and each having fully complied with all required preliminaries, as to which was the lowest bidder; the case is also important as it unsettles the doctrine of discretion on the part of public officers in the selection of and award to the lowest bidder, after the same had been apparently settled in the 36 Ohio St., case, supra; and is of further value because of the rule it lays down for public officers in the exercise of discretion, when discretion is con- ferred.

The action was in mandamus, and it involved the erection of a court house in Marion county, for which the necessary plans, drawings and specifications had been made and filed and the estimated cost of which was $100,000. The relator, whose name was Mitchell, by a proposal in due form, accompanied with the required bond, offered to do the work for $91,600. L & Co. proposed to do the work for $99,980; and W. S. for $92,322.24. Bids were also received for doing the separate parts of the work represented by different trades, and also other bids for doing the en- tire work. All of the separate bids, when aggregated, and all the bids for the entire work, except the three above mentioned, exceeded the esti- mate of $100,000. The commissioners awarded the contract to L. & Co. at their bid, whereupon the relator, as soon as he learned of the award, ten- dered to the commissioners a contract duly signed by him, and also a bond with sufficient sureties in the amount required by the commissioners, con- ditioned that he would well and faith- fully perform the contract, and de- manded the same. The commission- ers refused him the contract, and thereupon he brought this suit. An answer was filed admitting all of the above facts except as to the sufficiency of the bond which was denied, but which the proof showed amply suffi- cient. The answer further averred that the relator was not the lowest and best bidder; that the commission- ers carefull and honestly considered all the bids, together with the skill, responsibility, promptitude, honesty and experience of each bidder; it also alleged some other facts reflecting upon the private and business habits and conduct of relator, and concluded that the commissioners, acting upon the information furnished them and n good faith, awarded said contract to L. & Co., believing them while not the lowest bidders to be the lowest and best bidders. These allegations of the answer were denied by a reply, and the cause went to trial on the evidence. On the facts the court found that the commissioners acted in good faith, but under the mistak- en advice and belief that they had ample discretion to reject relator's bid upon the information furnished them; that whether any discretion was vested in them or not, they acted upon insufficient information; and that they offered relator no opportun- ity to put them into possession of the real facts before deciding against awarding him the contract. And the court assumes that if relator had been given a hearing he would have satis- fied the commissioners, as he did the court, that there was in fact no reason why the contract should not have been awarded to him. Then the court say that they might without more explan- ation, grant the peremptory writ asked, were it not for the claim urged that the commissioners are vested with complete discretion in the mat- ter of determining who is entitled to such a contract, and that such discre- tion, when exercised in good faith, will not be reviewed by the courts, even though the information on which they acted was false, or they were themselves misled by it, or it was wholly insufficient to justify their action, if they believed otherwise. The court then quotes at length from the Darke county case, supra, as to the duty of the commissioners under section 799, to award the contract to the person or persons who shall offer to furnish the materials and perform the labor at the lowest price, and give the required bond; and concludes with Judge Day's dictum as to the little discretion given to the commis- sioners save as to the bond, and in respect to that, "this discretion must

be exercised in a reasonable and proper manner." The court then takes up the contention that after the act of 1869 (section 799), and the decision in the Darke county cases, supra, complete discretion was vested in the commissioners by the act of 1877 (section 794), requiring the commissioners to let contracts to the lowest and best bidder, and that this act in terms repealed all laws and parts of laws then in force inconsistent with its provisions; that to determine who is the best bidder requires the exercise of a discretion by the commissioners limited only by its exercise in good faith in determining what is for the best interests of the public; that this act of 1877 being in conflict with the act of 1869 must have the effect of repealing it; that it being the latest expression of legislative will must govern; and then refers to the Shelby county case, 36 Ohio St., supra.

The court then proceeds to reconcile these two acts and sections of the Revised Statutes, and to holds that each section is in full force, and each is limited in its operation to cases included within its terms; that when certain conditions exist or are provided for, the commissioners may let contracts separately for separate parts of the work to contractors or tradesmen without requiring them to undertake the entire job, such contracts are governed by section 794, and must be let to the lowest and best separate bidders; when other conditions exist or are created, the commissioners may let the contract for the entire job, which letting is governed by section 799, and must go to the person offering to do the same at the lowest price and giving the required bond. Having reconciled the two statutes, the court goes on to say that this construction served to show that there is no confl ct between the Darke county cases and the Shelby county case, for in the latter case the bids were separate; the lowest bidder refused to accept the award of the contract, the commissioners readvertized, and the relator, who was the only other bidder under the first notice, sought to compel an award of the contract to him, and this the court held they were not bound to do. "What the result would have been if the commissioners had awarded the contract to the relator in that case, in the first instance, and refused it to the lowest bidder, we need not now determine." And at page 196, the court say: "It is no part of our duty to explain why the legislature saw fit to vest in the board a greater discretion when awarding contracts to a number of persons having no responsibility for each other than when awarding the same by a single contract to a person or persons responsible for the entire work;" thus implying that under section 794, which requires awards to be made to the lowest and best bidder, there is a discretion in the commissioners as enunciated in the Shelby county case, supra; but the court, at page 197, almost destrosy his implication by concluding that "whatever discretion is vested in the commissioners under section 794 (which we do not determine), it certainly is not greater than that vested in them under section 799, in respect to the acceptance of the bond;" and again, quoting Judge Day, the court adds: "Undoubtedly, this discretion must be exercised in a reasonable and proper manner." The result of the Ohio cases as I deduce it from the foregoing decisions is as follows:

1. Where by the terms of the statute the contract is to be awarded to him who offers to furnish the materials and perform the labor required at the lowest price, and gives good and sufficient bond, to the acceptance of the particular public officers having in charge the work, for the faithful performance of the contract, the statute is mandatory, and no discretion as to the award of the contract is vested in said officers.

2. Where, however, by the terms of the statute the contract is to be awarded to the lowest and best bidder, the question is still an open one so far as our supreme court is concerned as to whether or not discretion is conferred upon such officers to determine who is the lowest and best bidder; and this notwithstanding the case of

State ex rel., v. Commissioners of Shelby county, 36 Ohio St. supra; and,

3. That where discretion in such matters is conferred, such discretion must be exercised in a reasonable and proper manner. One element of this proposition is that before the discretion is exercised, that is determination made and action had upon such determination, reasonable opportunity must be afforded to all persons to be affected by the exercise no such discretion to be heard in their own behalf.

When we come to examine the decisions of other states, however, upon statutes very similar to the one under consideration, although not in any of the cases identical, we find a consistent harmony and uniformity of construction. I do not refer now to cases which construe the term "lowest bidder," for I take it that question has been settled in Ohio, although the construction of that term by our supreme court is contrary to the view usually adapted, and has been criticised by High in his work on Extraordinary Remedies, sections 90, 91, 92, and also by the supreme court of Maryland in 76 Maryland Reports, at page 395. I take the cases in their chronological order. The case of Kelly et al., v. City of Chicago, decided in 1871, and reported in 62 Ill., at page 279. This was an application for a writ of mandamus and also of injunction made against the city of Chicago and its Board of Public Works by unsuccessful bidders to compel the award to them, and to forbid the award to another, who was a higher bidder for a contract for the construction of a new lake tunnel to the waterworks of said city. Under the charter of the city of Chicago all contracts were to be awarded to the lowest reliable and responsible bidder who will sufficiently guarantee to the satisfaction of the Board of Public Works the performance of their contracts under the superintendence and to the satisfaction of said board. In denying both writs, the court said—

"The charter did not make it the absolute duty of the board to let the contract to the lowest bidder. The qualities of being reliable and responsible, it is obvious, were of the utmost consequence in a work of this magnitude. And the complainants must have been the possessors of these requisites as well as lowest bidders to make a case of duty on the part of the board. It was for the board to determine whether complainants were reliable and responsible; it exercised its judgment and found they were not so; it is the fit tribunal to pass upon the qualifications of contractors, and evidently under the charter it is the board of public works who are to be the judges and determine upon the required qualifications of bidders, and no one else. Nor can the courts restrain the exercise of this discretion by prohibiting execution, in the absence of fraud, which is not shown."

Commonwealth ex rel., v. Mitchell decided in 1876, and reported in 82 Penna. St., at page 343, was an action originally brought in the common pleas court to compel by mandamus the water commissioners of the council of Pittsburg and the council to award a certain contract to the relators because they were the lowest bidders and such contract had been improperly and illegally awarded to higher bidders. The act of May 23rd, 1874, of the Pennsylvania Assembly, required that work of the nature sought by the relators "shall be performed under contract to be given to the lowest responsible bidder, under such regulations as shall be prescribed by ordinance.

The supreme court in affirming the judgment below say—

"Now the court below, though they found, under the evidence, that the relators were responsible in all points in which the city had a right to inquire, yet they held that the word 'responsible' as employed in this act, when applied to contracts requiring for their execution not only pecuniary ability, but also judgment and skill, imposes not merely a ministerial duty upon the city authorities such as would result did their powers extend no further than to ascertain whose was the lowest bid and the pecuniary

responsibility of the bidder and his sureties, but also duties and powers which are deliberative and discretionary. In this we concur with the court below."

And they held that the court could not interfere except upon proof of fraud or bad faith.

Immediately following this case in the 82 Penna. St. Reports, is the case of Findlay v. the City of Pittsburg, at page 351, wherein on the same facts as in the previous case at page 343, it was sought to enjoin the award of the same contract to the successful bidder. But the court denied the writ, reaffirming the doctrine of the Mitchell case as to the commissioners' duties being not merely ministerial, but deliberative and discretionary, and that unless fraud or corruption were shown in the case it could not interfere.

The question was again raised in Douglass v. Commonwealth, 108 Penna. St., at page 559, decided in 1885, and the court reiterated the rule laid down in the 82 Penna. St., that this act calls for duties which are deliberative and discretionary, and that if the authorities act in good faith, though erroneously or indiscreetly, the court will not interfere.

And again, in 1894, in the case of Brick and Paving Co., v. Philadelphia et al., 164 Penna. St., at page 477, on an application for an injunction by a dissatisfied bidder, the court approved the construction and rule of non-interference laid down in 82 Penna. St., supra.

In Hoole v. Kinkead et al., decided in 1881, and reported in 16 Nevada at page 218, the application was for writ of mandamus to compel the awarding of contract for the erection of an insane asylum, which was being constructed by a board under a statute, which declared that the board of commissioners might adopt or reject any and all bids not deemed reasonable or satisfactory, but in determining bids for the same work or material, the lowest responsible bid shall be taken. The application was denied, the court holding that the provision for the lowest responsible bid is mandatory,

but in ascertaining whether or not a bidder was responsible the board was required to deliberate and decide, and in doing so they exercised judicial functions.

The question arose in New York in different form in the case of East River Gas Light Company v. Donnelly, et al., decided in 1883, by the New York court of appeals, and reported in 9 N. Y. State, 557. The action was one for damages for wrongfully rejecting proposals of plaintiff and refusing to award a contract to it.

By the charter of Long Island City, it was provided that "all work to be done or supplies to be furnished for the corporation    *    *    *    shall be by contract founded on sealed bids, or on proposals made in compliance with public notice,    *    *    *    and all such contracts when given shall be given to the lowest responsible bidder giving security." The defendants were the officers who had the power to award the contract in controversy, and they were basing their immunity from liability to plaintiff on the ground that they were quasi-judicial officers in awarding the contract, and, hence, free from personal responsibility for their action, however erroneous or wrong or even malicious it may have been. And the court held that this contention was right; that it was the defendants' duty to choose between the different illumination substances offered; to determine the responsibility of the bidders, the sufficiency of the security, etc; and that this could only be done after comparing the bids and the advantages of the methods proposed.

"As to all these things, there must be first investigation and inquiry, then discretion, and afterwards determination or judgment. Then comes the only ministerial duty, that of delivering or executing the contract. In this case, it follows the determination, and it is of that the plaintiff complains."

Again further along the court says: "If the defendants had found and decided after such process of investigation and comparison as they thought necessary to make that the

plaintiff was in fact the bidder who answered the call of the statute, and after that determination had refused to enter into the contract, a case would have been presented over which a court, even in favor of a private suitor, might perhaps have cognizance. The question is not before us."

In the case of State ex rel., v. McGrath, decided in 1886, and reported in 91 Missouri, 386, the supreme court of that state held, in an application for mandamus, that the duties of officers, entrusted with the letting of contracts for public work to the lowest responsible bidder, are not of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of the courts by mandamus.

In Madison v. The Harbor Board of Baltimore City et al., reported in 76 Maryland Reports, 395, and decided in 1892, the question arose in a mandamus suit by a disappointed bidder for a dredging contract, authorized to be awarded under a statute which provided that the contract shall be awarded to the lowest responsible bidder, provided said bidder be bona fide engaged in the business of dredging. And the supreme court of that state say that:

"The decisions of public officers like these commissioners upon questions such as those involved here shall not be reviewed by the courts unless it can be shown that such public officers have been guilty of fraud in the exercise of their discretion."

And in Van Reipen v. Jersey City, decided in 1895, and reported in 58 New Jersey Reports, at page 262, the question was presented in an action, peculiar to New Jersey, I believe, to review the award of a contract by Jersey City to the Jersey City Water Company for the supply of pure water to Jersey City for a term of twenty-five years. The charter of Jersey City provided that no contract for work or materials shall be entered into except after due advertisement for six days, whereupon the contract shall be awarded to the bidder who offers the most advantageous terms. In its opinion the court say:

"The court disclaims the right to interfere with that discretion which has been confided to the city officials and to substitute its judgment for theirs. We are possessed of no expert knowledge upon the subject of water supply which will enable us to pronounce with any confidence that the judgment of those to whom this municipal scheme is entrusted is not well founded. We cannot, therefore, enter into the discussion as to the comparative merits of the several bids under the proposals set forth. In that issue the court is not the constituted arbiter. In the absence of fraud or a palpable abuse of discretion on the part of the municipal authorities, the only question for judicial cognizance is whether there has been any violation of legal principles, or neglect of prescribed formalities in entering into the engagement which is the subject of this controversy."

The logic of the above decisions is that when certain power is conferred upon public officials, the exercise of which power necessarily involves inquiry, investigation, comparison, decision and determination before the power can culminate in an act, such as an award of a contract, the officials are necessarily invested with an auxiliary or incidental power to make this inquiry, investigation, comparison, decision and determination; and this auxiliary or incidental power is what is known as their discretion, or the exercise of their discretion. This conclusion is justified, moreover, by the ordinary rules of construction; for it is a familiar principle that where general power is conferred, all that is necessary to carry into effect this general power is, in the absence of plain words of exclusion, also conferred; otherwise, this conference of the general power would be useless.

Apply these principles to the section and division of the statute under consideration, and it seems clear that it was the intention of the legislature to confer upon the Commissioners in this case the power to determine who was the lowest and best bidder for any

given contract. The preamble of section 7, provides that they shall "have power and authority and be governed in respect to contracts as follows" * * *. And then division eight provides that "said Commissioners shall enter into contract with the lowest and best bidder," etc. As to the quality "lowest", the statute in effect furnishes the test by which the Commissioners are to be guided, for, in all of the provisions relating to the award and execution of contracts, it provides that, as a preliminary, plans and specifications shall be made, detailed drawings and forms of bids be prepared, and a careful estimate of cost be made. These preliminaries, and especially the estimate of cost, furnish a standard by which the lowness of the respective bidders is ascertained; it requires no inquiry and investigation into the items and details of bids; it requires no deliberation, but a simple computation of gross amounts, which is merely clerical and ministerial, and a comparison of those computations with each other and with he estimated cost, and from this comparison to deduce the result as to the lowest bid or bidder. It was on argument of this nature that our supreme court determined that the quality of "lowest" with reference to price was merely a matter of figures, and not of discretion.

But the statute under consideration furnishes no test or standard by which to measure whether a bidder is "best" or not, and provides for nothing, speaking figuratively, in the nature of plans, specifications, drawings and estimates with which to make a comparison. Nevertheless, it provides for the quality "best" in addition to the quality "lowest", and that term cannot be ignored in the interpretation of the statute, nor the ascertainment of that quality be omitted in the inspection and comparison of the bids. No power is conferred upon any one else by this statute with regard to the construction and enlargement of the waterworks which is the general purpose and intent of the whole statute; no power is conferred, as to the making of contracts for the

carrying out of the statute's general purpose, except upon these Commissioners; there are no words which exclude from them the power of deciding as to the quality of the bidders, and unless this power be lodged with them, their general incidental power to make, award and execute contracts would be a useless grant of power, because they would be unable to make such contracts, until it was ascertained who was the lowest and best bidder. Hence, under the ordinary rules of construction as well as on the authority of the reported cases, it is my opinion that this statute vests in these Commissioners this power of ascertaining and determining who is the "best" as well as who is the "lowest" bidder. I am confirmed in his opinion by a number of other considerations which I think have some weight.

The whole statute is carefully drawn, and it was evidently known to the drafters and to the legislators what the law of Ohio, as to the quality of "lowest" in respect to the biddings and bidders, was under the supreme court decisions; the additional quality of "best" was added, and, it may be, very wisely added, in order to give the Commissioners discretion. The work contemplated is, and was at the time of the passage of the act known to be, a work of great magnitude and likely to cover a considerable period of time. Its construction, and the manner thereof, is of great consequence to the people of Cincinnati, not only as regards the completion of the work, but also in respect to the results to be derived from it when completed. Many factors enter into a conception of what is "best" in anything, and as was said in the 39 Ohio St., case, supra, by counsel engaged therein, the skill, responsibility, promptitude, honesty and experience of bidders are all to be considered, and, as was said in the New Jersey case, supra, where could the power and duty to pass upon these qualifications be better lodged than in the Commissioners who have under their supervision the control of the whole work. Again, by the provi-

sicns of the same division eight, of section 7, it is provided that the Commissioners "may reject any and all bids;" and the whole act is wanting in that provision which is peculiar to all other Ohio laws of kindred nature, that no bid shall exceed the estimated cost required to be preliminarily made: in other words, that no contract shall be awarded to a bidder, even the lowest, if his bid is in excess of the estimated cost. The modifying or enlarging effect of this provision as to the rejection of bids is not in controversy now, but as it certainly confers a large discretion, (13 C. C. O., 603), it but emphasizes the intent to confer discretion in the previous mandatory clause as to the award of the contract. Having determined that the Commissioners have a discretion to determine who is the best bidder, we come now to the question of what this discretion consists, and how it is to be exercised. Sir William Jones, in one of his numerous dissertations, speaking of "discretion", said that it consisted in "doing as one pleases", but that expansive definition has long since been modified and restricted. In the case of the Judges v. People, 18 Wendell, at page 99, Senator Tracy in a discourse on "discretion" in general, says, speaking of discretion other than judicial discretion, that it means,

"When applied to public functionaries, a power or right conferred upon them by law, of acting officially in certain circumstances, according to the dictates of their own judgment and conscience, uncontrolled by the judgment or consciences of others."

And in the People v. Superior Court, 10 Wendell, 291, and in Schlandecker v. Marshall, 72 Penna. St., 206, the highest courts of New York and Pennsylvania quote with approval the following from Jacobs' Law Dictionary:

"When anything is left to any person to be done according to his discretion, the law intends it must be done with sound discretion and according to law; and the court of B. R. (King's Bench) hath a power to redress things that are otherwise done, nowithstand-ing they are left to the discretion of those that do them."

And this term, "a sound discretion", has become firmly incorporated into the language of the law. As exemplifying his definition, we have the case of the People v. Gleason, 121 New York, 631, wherein it was contended on behalf of the plaintiff, who was relator in a mandamus suit to enforce payment of a claim to him on an awarded contract, that there was a conclusive presumption that the common council adjudicated that his bid was that of the lowest responsible bidder when it awarded to him the contract.

"If this claim is well founded, then provisions like that above quoted from the city charter are of little use and they can always be effectively disregarded.

"It is true that the common council, where there are several bidders, have jurisdiction to determine who is the lowest responsible bidder, but in order to give its action any legal effect, it must exercise its jurisdiction and make a determination based upon some facts. If it refuses to accept the lowest bid for work or supplies, there must be some facts tending to show that it is not that of a responsible bidder, or there must be at least some pretense to that effect. An arbitrary determination by such a body to accept the highest bid without any facts justifying it, cannot have the effect of a judicial determination, and must be denounced as a palpable violation of law."

And in Gravel and Paving Company v. New Orleans, 45 La. Ann, 911; 13 Sou., 183, which was an application for an injunction by an unsuccessful bidder, the city charter required that the furnishing of material for public works shall be given to the lowest bidder, but there was a provision that the council might reject any and all bids. The court say—

"This proviso in the charter was to obtain the work and material at the least possible cost to the tax-payer after competition; and the proviso was intended for the same public interest and economy to protect the tax

payer from imposition, and while inviting competition to secure good material and responsible contractors. While the city council would not be justified, and the courts would intervene to protect the tax payer in such event, to arbitrarily reject a bid, and thus defeat the object to be attained by competition, it is vested with a certain discretion in rejecting bids which will not be controlled when exercised with prudence in the public interests."

And in Clapton v. Taylor, 49 Mo. App. 117, where the ordinance under which the work was done provided that the work should be let to the "lowest responsible bidder", the court says that,

"If the charter or ordinance of a municipality provide that the contract shall be let to the lowest bidder, a violation of this command of the law would be against the substantial rights of the tax payer and would render a contract void which was not let to the lowest bidder, in any such case where such rejection of the lowest bid was an exercise of an arbitrary will on the part of the city authorities without any showing that such authorities exercised their jurisdiction in that respect by determining that the rejected bid was not the lowest and best bid."

Summing up all the authorities hereinbefore referred to, the rule appears to be this: That the discretion vested in the Commissioners herein as to the lowest and best bidder is a sound discretion; that is, not a mere power of arbitrary determination, but a power of decision and determination which must be based upon facts, and be made in good faith and without collusion or fraud upon the part of the Commissioners, and after a hearing upon such facts with full opportunity afforded to all persons interested to be present and heard at such hearing. An award secured in any other way would be illegal, and a contract based upon such an award null and void.

Now, how stands the petition of the plaintiff when tested by this rule? It is an elementary principle of code pleading that in order to sustain a cause of action all of the operative, ultimate facts essential to the cause of action must be pleaded; that is such facts as, under the substantive law, operate to invest one with a right, or to divest another of a right, or to show a wrongful interference with an existing right.

Under the provisions of section 1777 and 1778, Revised Statutes, plaintiff is given the right to maintain an action in the nature of the one he brings in order to restrain the misapplication of funds, the abuse of corporate power, or the execution or performance of any contract made in contravention of the laws governing the municipality or which was procured by fraud or corruption. Excepting the provision as to contracts procured by fraud or corruption, the averments of plaintiff's petition, if considered sufficiently full, would entitle him to relief on any one of the other three grounds. Has plaintiff made all the necessary averments entitling him to relief— are any substantial averments omitted? The resultant effect of all plaintiff's allegations is that the defendants are about to enter into a certain contract which he claims will be illegal and void and entail a misapplication of funds, because it is about to be made in contravention of the laws governing the Commissioners and conferring powers upon them.

In the previous discussion, we have seen that full power, under certain conditions, is conferred upon the Commissioners to make and execute the contract complained of here; consequently, if those conditions be complied with, the contract may be entered into lawfully, and any application of funds under the contract will also be lawful.

The conditions are that the contract be awarded to "the lowest and best bidder", and we have determined that the Commissioners have vested in themselves a discretionary power to decide who is the lowest and best bidder, which discretion is not an arbitrary one and must be exercised in a reasonable and proper manner.

The petition alleges that Folz,

Willard Co., were the lowest and best bidders; that A. J. Henkel was not the lowest and best bidder, but notwithstanding that fact, the Commissioners awarded the contract to A. J. Henkel. Waiving the defendants' contention that the averments as to "the lowest and best bidder" are but conclusions of law, and treating them as averments of fact, do they, stated thus baldly, constitute the ultimate, operative facts that alone are essential to be pleaded? The statute does not require the contract to be awarded to the bidder who is, or may afterwards turn out to be, the lowest and best bidder, but rather to the bidder who in the judgment of the Commissioners at the time of the award, that judgment being honestly, fairly and in proper manner exercised. was determined to be the lowest and best bidder. The quality of the bidder is to be determined not by what it really may be, but by the discretion of the Commissioners. The manner in which the Commissioners arrived at their decision as to the quality of the bid is another question. If the pleader wishes to place his case upon the quality of the bidder, as distinguished from the manner in which the Commissioners arrived at that quality, he is precluded by the act which gives to the Commissioners the power to determine that quality, and by the rule which precludes the courts from reviewing or impeaching the exercise of that power, save as to the manner in which it was exercised, which will be discussed hereafter.

It is a familiar rule, applied alike in mandamus, injunction and certiorari, that the courts will not undertake to control or review the discretion of inferior tribunals or bodies vested with the exercise of discretionary powers. What is meant by that rule is that the result of the exercise of discretion, to-wit the act done, or award made, will not be interfered with, unless the prerequisites necessary to the result are attacked. And when such prerequisites are attacked, then the plaintiff is confronted by another rule, to-wit, that the burden is on him to set forth specifically the facts and circumstances which show that the discretion conferred was not honestly, reasonably and properly exercised: for public officers are, in the exercise of their powers, guarded by a rule of presumption that they have done their duty and have not abused their discretion. Of course, if the plaintiff claims that the Commissioners did decide that Folz, Willard & Co., were the lowest and best bidders, and arbitrarily awarded the contract to Henkel, he should set out those facts; no such facts appear and they will not be presumed. The averment that, as to the lowest and best bid, Folz, Willard & Co.'s bid "was so reported to the said Commissioners", is not an averment that the Commissioners so decided; the statute makes no provision for such a report, and the duty of final decision is still with the Commissioners. The above views, I think, are sustained by the authorities pertinent to these questions. Thus, in Clapton v. Taylor, supra, the court below found that the plaintiff's intestate who secured the contract was not the lowest bidder, but that one Anderson who was the lowest bidder was also a responsible bidder; and the appellate court says:

"In this case the ordinance required the contract to be let to the lowest responsible bidder. It does not appear that the city authorities did not exercise their juirsdiction in a proper manner to determine who was the lowest responsible bidder. There is nothing in the case going to show fraud, or to attack the bona fide conduct of the city officials entrusted with determining who was the lowest responsible bidder. Such matters should be made to appear in order to overturn the contract. * * * *

"Though the presumption may be overcome, yet it is presumed that the city authorities have done their duty and have not abused their discretion. It is true that Anderson and not plaintiff's intestate was the lowest bidder, and the trial court found that Anderson was a responsible bidder. But the trial court did not find that the city authorities so found him to

be. The question was within the jurisdiction of that body."

And, in the Gas Light Co., v. Donnelly, 93 N. Y., supra—

"If the defendants had found and decided, after such process of investigation and comparison as they thought necessary to make, that the plaintiff was in fact the bidder who answered the call of the statute, and after that determination had refused to enter into the contract, a case would have been presented over which a court, even in favor of a private suitor, might perhaps have cognizance."

And in People v. Gleasc, 121 New York, supra, the court, after saying that "if contracts for work and supplies can be arbitrarily let, subject to no inquiry or impeachment, to the highest instead of the lowest bidder, under such a provision as is found in this charter, * * * then the provisions can always be nullified and will serve no useful purpose," continues at page 634, "if there were nothing in this record showing that the relator was not the lowest responsible bidder, it would have to be assumed that he was, and that the members of the common council had discharged their duty and so determined." And in Gravel Co. v. New Orleans, 45 L. Ann, supra, on an application for a rehearing, the court say:

"Sworn officers will be presumed to have done their duty, at least, until they have been alleged to have done otherwise. There is not a single word in plaintiff's petition accusing the common council of New Orleans with having acted arbitrarily, fraudulently or improperly.

"The plaintiff relies upon the naked fact advanced by it that its bid was the lowest and that its material was equal cr superior to that of the other bidders, and that it could furnish security. We are left absolutely in the dark as to the reasons upon which council acted. We are bound in the absence of direct charges and statements of facts to presume that their action was honest and legal. We cannot eke out a case for plaintiff by inferences of wrong doing and make

suspicicus and conjectures take the place of allegations. While it is possible there was much wrong doing, it might alsc well be that council acted after a very strict examination into all the facts and circumstances which it had the legal right to examine into in order to ascertain whether plaintiff's bid was a proper one or not, and that these conclusions thereon are justified and right. * * * If the council was guilty of wrong doing plaintiff should have directly so alleged, and stated facts and circumstanes to show in what cause that wrong doing arose. * * * When a plaintiff selects an act as the object of his attack which is not per se necessarily wrongful and illegal, but which may exist consistently with honesty, fair dealing and legality, it is the duty of the attacking party to set out specifically the facts which would give to the act an illegal or wrongful character."

And in Kitchel v. Board of Commissioners, 123, Ind., 54, which was a case involving the erection of a court-house and in which it was sought to disprove the necessity therefor, the supreme court of Indiana held that the necessity was a matter within the discretion of the commissioners, and that when the board acted within its discretion, there is no place for judicial interference, until it is clearly shown that the commissioners acted fraudulently, corruptly or in violation of their duty as public officers, and the exercise of such discretion cannot be questioned on the ground of expediency or propriety.

The logical deduction from these cases is that where the bare act of officials is brought into question, unconnected with other facts, and such act is a discretionary act, the courts will not interfere, because the duty of deciding has been placed upon the officials, and the courts will not substitute their judgment for that of the officials to whom the duty cf deciding has been committed. To justify interference at all with the act or decision of the officials, it is necessary that the means, method and manner by which the act was produced or the

decision reached be called in question, and that must be done by a full statement of all the facts and circumstances which bear upon such manner, means and method. Applying these principles to the allegations of the plaintiff herein, the only issue presented to the court is whether Folz, Willard & Company's bid was the lowest and best bid. From the averments of the petition, coupled with the presumption in favor of the Commissioners, it must be assumed that the Commissioners found otherwise. With that finding the court cannot interfere, and, hence, the averments that Folz, Willard & Co., were the lowest and best bidders, and that Henkel was not the lowest and best bidder, and that, notwithstanding this, the Commissioners awarded the contract to Henkel, are not sufficient standing alone to create a cause of action in plaintiff; in other words, they are not sufficiently operative facts to call for an exercise of the substantive law: they operate under the law to create no rights or obligations. They might be made operative by the addition of other facts necessary and heretofore discussed herein; but until such other facts are pleaded the petition states no cause of action, for, as said in the various cases above, the court and the law will not presume, to help out a cause of action, facts which involve fraud, wrong-doing or abuse of discretion.

The demurrer to the amended petition is sustained with leave to amend if desired.

*E. G. Kinkead, Jonas B. Frenkel,* for demurrer.

*John C. Healey,* contra.